717 So.2d 325 (1998)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Jerry W. GUEST.
No. 97-CC-00973-SCT.
Supreme Court of Mississippi.
July 23, 1998.
*326 Luther T. Brantley, III, Jackson, Irene Mikell Buckley, Jackson, for Appellant.
Lee Sorrels Coleman, West Point, for Appellee.
En Banc.
BANKS, Justice, for the Court:
¶ 1. The present action concerns allegations of judicial misconduct on the part of Justice Court Judge Jerry W. Guest. After careful consideration, we follow the recommendation of the Mississippi Commission on Judicial Performance. Accordingly, Judge Guest is suspended for ninety days without pay, fined $1,500.00, and assessed all costs of this proceeding, which total $839.65.

I.
¶ 2. On June 20, 1996, Orlando Thomas appeared before Jerry W. Guest, Justice Court Judge of District 1, Clay County, Mississippi, on charges of driving with an expired driver's license and an expired inspection sticker. During his arrest Thomas had apparently become uncooperative and cursed at one of the officers. It was only after Thomas appeared in court, however, that he learned of an additional charge of public profanity stemming from this incident. Thomas pled guilty to the traffic charges, and was then tried and found guilty by Judge Guest of public profanity.
¶ 3. During the course of this trial, Thomas was uncooperative and repeatedly interrupted the officer who was testifying. In response to this conduct, Judge Guest reportedly told Thomas to "sit down, boy, and shut up." After he was found guilty, Thomas walked from the courtroom toward the exit. Shortly before he reached the exit, Thomas muttered, "fuck y'all." Thomas was immediately placed under arrest, handcuffed behind his back and brought back before the court. After refusing to answer questions, Thomas was escorted out of the courtroom by two officers. According to Judge Guest, Thomas then cursed again, and "when he said that, I come down off the stand." Thomas claims that Judge Guest called him a "black son of a bitch." Thomas stated that during the ensuing scuffle the judge put him in a headlock and hit him several times.
*327 ¶ 4. Judge Guest argued that his actions were necessary to protect Ms. Gwen Collums, the court clerk. The judge admitted, however, that it was Ms. Collums, aided by a constable, Floyd McKee, who pulled him away from the handcuffed defendant. The judge further agreed that it is "not a judge's job to physically restrain a defendant, no matter what he says to you." In response to the question of whether he cursed the defendant in the courtroom during the altercation, Judge Guest stated that he "[p]robably did."[1]
¶ 5. On September 27, 1996, the Mississippi Commission on Judicial Performance (Commission) filed a Formal Complaint against Judge Guest. The original complaint contained three counts. Count I alleged that Judge Guest's conduct during Thomas's trial violated Canons 1, 2(A), 2(B), 3(A)(1), 3(A)(2) and 3(A)(3) of the Code of Judicial Conduct of Mississippi Judges. Count II alleged irregularity with regard to the affidavits and arrest warrants connected with the subsequent contempt of court charges filed against Thomas. Count III charged that the alleged misconduct outlined in Counts I and II were a violation of Section 177A of the Mississippi Constitution and constituted willful misconduct and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.
¶ 6. On December 24, 1996, Judge Guest filed an Answer to the Formal Complaint denying the allegations of judicial misconduct. On February 19, 1997, the matter was heard before a three-member Hearing Committee (Committee) composed of members of the Commission. At the conclusion of this hearing, the Committee voted to dismiss Count II and made a finding that the conduct of Judge Guest alleged in that count did not violate the contempt powers of the court.
¶ 7. In its Findings of Fact and Recommendations, the Committee found by clear and convincing evidence that Judge Guest had used inappropriate language in the courtroom and had come down from his bench and grabbed Thomas around the head. Despite the judge's denial that he had ever met Thomas before June 20, 1996, the Committee also found that the judge knew Thomas from a prior confrontation relating to the judge's private business, and that during this confrontation the judge had called Thomas a "nigger." Based on his conduct both in and out of the courtroom, the Committee concluded that Judge Guest had violated Canons 1, 2(A), 2(B), 3(A)(1), 3(A)(2) and 3(A)(3) of the Code of Judicial Conduct. The Committee recommended that Judge Guest be publicly reprimanded, fined $1500.00 and assessed all costs of the proceeding.
¶ 8. At the meeting of the entire Commission on August 8, 1997, the Commission adopted most of the Committee's Findings of Fact and Recommendations. The Commission seemed hesitant to unqualifiedly adopt the Committee's finding, however, on whether Thomas and Judge Guest knew each other from a prior confrontation. The Commission softened the Committee's language in regard to this incident, stating only that the judge's denial of the prior incident had been "called into question" by Thomas's testimony, and that "Mr. Thomas further testified that during that confrontation, Judge Guest called Mr. Thomas a `nigger.'" In spite of its hesitancy to make an express finding as to the prior incident, the Commission increased the recommended penalty. By a vote of sixto-one the Commission recommends to the Mississippi Supreme Court that Judge Guest be suspended from office for a period of ninety days, fined $1,500.00 and assessed all costs of the proceeding, which total $839.65. One dissenting member of the Commission recommended removal from office.
¶ 9. In his brief, the Respondent admits that his conduct was inappropriate for a judge. Accordingly, he seeks only to have the Court reinstate the original recommendation of the Committee for a public reprimand instead of a ninety-day suspension.

II.
¶ 10. "In judicial misconduct proceedings, this Court is the trier of fact, and it *328 has sole power to impose sanctions." In re Quick, 553 So.2d 522, 527 (Miss.1989). See also In re Garner, 466 So.2d 884, 885 (Miss. 1985). Although this Court has an obligation to conduct an independent inquiry, it nonetheless gives great weight to the findings of the Commission, which has had the opportunity to observe the demeanor of the witnesses. Id.; Mississippi Comm'n on Judicial Performance v. Peyton, 645 So.2d 954, 956 (Miss.1994). However, this Court is not bound by any recommendations of the Commission. Mississippi Comm'n on Judicial Performance v. Russell, 691 So.2d 929, 942 (Miss.1997); In re Quick, 553 So.2d at 527.

III.
¶ 11. Judge Guest admits in his brief that his conduct was inappropriate for a judge, and seeks only to have this Court reinstate the original recommendation of the Committee for a public reprimand instead of a ninety-day suspension. Accordingly, this Court adopts the Commission's findings that the conduct of Judge Guest violated Canons 1, 2(A), 2(B), 3(A)(1), 3(A)(2) and 3(A)(3) of the Code of Judicial Conduct.
¶ 12. This Court concludes that Judge Guest's conduct constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute. MISS. CONST. art. 6, § 177A. Even in the absence of Judge Guest's admission, a detailed discussion of each Canon he violated would not be necessary to arrive at such a conclusion. It has been remarked that "[w]e can generally recognize examples of such conduct when it is displayed before us." In re Anderson, 412 So.2d 743, 752 (Miss.1982). Here, the judge assaulted a litigant in a crowded courtroom and directed profane language at the defendant during the altercation. The actions of Judge Guest clearly rise to the level of willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.

IV.
¶ 13. Section 177A of the Mississippi Constitution provides that upon recommendation by the Commission, a judge may be removed, suspended, fined, publicly censured or publicly reprimanded by this Court. MISS. CONST. art. 6, § 177A; Mississippi Comm'n on Judicial Performance v. Vess, 692 So.2d 80, 83 (Miss.1997). When considering the appropriateness of a particular sanction in judicial discipline cases, this Court endeavors to impose a sanction which fits the offense and is consistent with other like cases. Mississippi Comm'n on Judicial Performance v. Fletcher, 686 So.2d 1075, 1078 (Miss.1996); In re Bailey, 541 So.2d 1036, 1039 (Miss.1989).
¶ 14. There are few cases involving physical assault by a judge. In arguing for a reprimand instead of a suspension, Judge Guest compares his case to Mississippi Comm'n on Judicial Performance v. Whitten, 687 So.2d 744 (Miss.1997). In Whitten, a municipal court judge, along with several friends, stopped at gunpoint a vehicle carrying three individuals whom the judge suspected of trespassing on his neighbor's property. Judge Whitten fired several shots in an attempt to stop the vehicle and eventually shot out the tire. The individuals were then made to lie on the ground at gunpoint while the judge attempted to ascertain their identities through threats of serious bodily harm. Id. at 745-46. For his role in this incident, the judge was publicly reprimanded and fined $2,500.00. Id. at 749.
¶ 15. Judge Guest concedes that his conduct occurred in the courtroom and is thus more fittingly the subject of judicial sanctions than that of the judge in Whitten. He argues, however, that the "unjustified use of deadly force should more than outweigh the consideration of where the offense occurred." In addition, he argues that Whitten is a licensed attorney while Judge Guest "is a justice court judge with a GED from a vocational center."
¶ 16. In regard to the first argument, it is important to look at the purpose of judicial discipline proceedings and sanctions. This Court has adopted the following pronouncement of the Nebraska Supreme Court:
The purpose of sanctions in cases of judicial discipline is to preserve the integrity and independence of the judiciary and *329 to restore and reaffirm public confidence in the administration of justice. The discipline we impose must be designed to announce publicly our recognition that there has been misconduct; it must be sufficient to deter respondent from again engaging in such conduct; and it must discourage others from engaging in similar conduct in the future. Thus, we discipline a judge not for purposes of vengeance or retribution, but to instruct the public and all judges, ourselves included, of the importance of the function performed by judges in a free society. We discipline a judge to reassure the public that judicial misconduct is neither permitted nor condoned. We discipline a judge to reassure the citizens of Nebraska that the judiciary of their state is dedicated to the principle that ours is a government of laws and not of men.
Mississippi Comm'n on Judicial Performance v. Milling, 651 So.2d 531, 538-39 (Miss.1995) (citing In re Kneifl, 217 Neb. 472, 351 N.W.2d 693, 700 (1984)). See also Whitten, 687 So.2d at 748-49.
¶ 17. As the above passage makes clear, the primary purpose of judicial sanctions is not punishment of the individual judge but "to restore and maintain the dignity and honor of the judicial office and to protect the public against future excesses." In re Harned, 357 N.W.2d 300, 302 (Iowa 1984). "The official integrity of the justice court judges is vitally important, for it is on that level that most citizens have their only experience with the judiciary." Mississippi Comm'n on Judicial Performance v. Gunn, 614 So.2d 387, 389 (Miss.1993); In re Garner, 466 So.2d at 887. "`Therefore, it is imperative for justice court judges to conduct themselves with the utmost diligence in order to uphold the public's confidence.'" Whitten, 687 So.2d at 748 (quoting Gunn, 614 So.2d at 389-90.)
¶ 18. In light of the emphasis which the law places on the public's perception of the legal system, the fact that Judge Guest's misconduct took place during proceedings in a crowded courtroom has special impact on the choice of an appropriate sanction. Unlike the actions of Judge Whitten, which occurred in a private setting and in his capacity as a private individual, the actions of Judge Guest took place in his official capacity as a judge. The debasement of the judiciary in the public eye is far greater where a robed judge, in response to a verbal insult from a physically restrained defendant, leaves the bench to settle the score with fisticuffs and profanity.[2]
¶ 19. In response to Judge Guest's argument that his educational level should be a mitigating factor in imposing a sanction, we find that this has little bearing on the appropriate sanction in the present case. The law requires only that justice court judges be a high school graduate or have a general equivalency diploma. MISS. CONST. art. 6, § 171. Nevertheless, "we insist that our justice court judges be nothing less than just that judges." In re Bailey, 541 So.2d at 1039. Judge Guest's transgression did not involve a failure to comprehend an abstruse point of law. He neglected the elementary principle that judges, rather than acting like common ruffians, should "behave with judicial temperament and perform their duties according to the law and by reference to the process of adjudication." Id. Thus, the Respondent's lack of formal training is not a mitigating factor in fixing the appropriate sanction in the present case.
¶ 20. A review of the few similar cases from other jurisdictions supports the conclusion that suspension rather than a mere reprimand is the appropriate sanction in the present case. The disciplinary case with the most similar facts is In re Richter, 409 N.Y.S.2d 1013 (N.Y. Ct. on the Judiciary 1977). That case involved two incidents of verbal confrontation in which the judge came off the bench and approached litigants. Unlike the present case, there was no physical contact between the judge and the defendants and no allegations of racially offensive *330 remarks. The judge in that case received a "severe censure." Id. at 1019.
¶ 21. The West Virginia case of In re Gorby, 176 W.Va. 11, 339 S.E.2d 697 (1985), involved an off-the-bench incident in which the judge engaged in a verbal and physical altercation at a high school football game. The Supreme Court of West Virginia found this to be a violation of Canon 2(A) of the Code of Judicial Conduct and suspended the judge for six months without pay. The suspension was later reduced to five months. Id. at 703.
¶ 22. As these cases suggest, a judge's willing involvement in a physical altercation warrants serious discipline. In the present case, Judge Guest not only unjustifiably initiated physical contact with a handcuffed defendant, but he did so in a crowded courtroom during a judicial proceeding. Moreover, he uttered profanity during this incident. Accordingly, this Court follows the recommendation of the Commission that Judge Guest be suspended for ninety days without pay, fined $1,500.00, and assessed all costs of this proceeding, which total $839.65.

V.
¶ 23. In light of the egregious conduct of Judge Guest, this Court has carefully considered whether removal from the bench would be a more appropriate sanction. As already noted, there are few cases in which a judge has come off the bench to confront a defendant in the courtroom. In the New York case of In re Richter, the judge did not make physical contact with the defendants, and yet received a "severe censure." In re Richter, 409 N.Y.S.2d at 1019. It should be noted, however, that in that case the judge's conduct involved multiple incidents of verbal confrontation in two unrelated cases, as well as judicial impropriety in requiring thirteen defendants to make charitable contributions as a condition for dismissal of criminal charges against them or imposition of a sentence of conditional discharge. Id. The West Virginia case of In re Gorby involved physical contact which did not take place in the courtroom. In that case the judge was suspended without pay. In re Gorby, 339 S.E.2d at 703.
¶ 24. In determining whether removal is an appropriate sanction, this Court looks to Mississippi cases in which that sanction has been imposed to determine whether the conduct in the present case is equally egregious. This Court will remove a judge from office when the misconduct involved warrants such action. See, e.g., Mississippi Comm'n on Judicial Performance v. Dodds, 680 So.2d 180 (Miss.1996) (removal from bench warranted for judge who engaged in ticket fixing, improperly handled driving under the influence (DUI) charge, accepted money without legal authority, engaged in ex parte communications, signed an execution of judgment without legal authority, and obstructed the judicial process); Milling, 651 So.2d 531 (judge's actions in making conscious decision to become socially involved with person who appeared in her court as defendant and who she knew was fugitive from another state, summarily dismissing fugitive warrant, allowing fugitive to driver her automobile after judge herself had suspended fugitive's license, and openly living with and subsequently marrying convicted felon warrant removal of judge from office); Mississippi Comm'n on Judicial Performance v. Chinn, 611 So.2d 849 (Miss.1992) (abuse of contempt powers, ticket fixing, failure to abide by statutes and attempts to influence other judges warranted removal from office); Mississippi Judicial Performance Comm'n v. Hopkins, 590 So.2d 857 (Miss.1991) (justice court judge removed from office for the combination of allowing clerks to dismiss tickets without hearing, failing to sign court dockets and dismissing tickets in exchange for information of other criminal activity); Mississippi Judicial Performance Comm'n v. Coleman, 553 So.2d 513 (Miss.1989) (utilizing criminal processes to collect fines and fees, failing to properly account for said fines, and converting them to own use warranted removal from office); In re Quick, 553 So.2d 522 (Miss. 1989) (justice court judge removed from office for adjudicating numerous DUI convictions and routine traffic convictions without reporting convictions to Commissioner of Public Safety); In re Hearn, 542 So.2d 901 (Miss.1989) (practice of ticket fixing, summary adjudication that criminal defendants *331 are not guilty on basis of ex parte communications or other undocketed reasons, submission of improperly changed court abstracts to state Department of Public Safety, use of official influence to seek favorable consideration by judges of other courts for tickets issued to individual defendants, and use of justice court personnel and supplies to carry out course of conduct constitutes judicial misconduct and warrants removal from judicial office, in light of prior public reprimand); In re Stewart, 490 So.2d 882 (Miss.1986) (removal warranted where judge converted to his own use money which came into his hands by virtue of office as justice court judge and by falsifying court records to cover his misconduct); In re Garner, 466 So.2d 884 (judge removed from office upon his admission of converting approximately $3,700.00 in public funds for a three or four year period); In re Anderson, 412 So.2d 743 (imposing traffic fines greater than that officially reported and paid to the county and converting the difference to his own use warranted removal of judge from office).
¶ 25. As this lengthy list of cases demonstrates, removal of judges has usually involved repeated or systematic abuses of their judicial office. As a general rule, this Court will not remove a judge from office for a first offense, absent a showing of personal gain. Mississippi Comm'n on Judicial Performance v. Hartzog, 646 So.2d 1319, 1322 (Miss.1994); In re Bailey, 541 So.2d at 1040. In Bailey, the Court declined to remove a judge from office for a first offense where there was no evidence that the respondent had acted with malice or other improper motive and where he had not benefitted from the conduct in question. In re Bailey, 541 So.2d at 1039. In Quick, a later case involving multiple abuses, the Court remarked:
On the other hand, the Respondent should have some difficulty relying on Bailey because that case can easily be distinguished from the circumstances involved in his case. In Bailey, for example, this Court focused its attention on one case where the charges of judicial misconduct arose. In this case, the Court cannot merely look to one instance of judicial misconduct; nor is the Court limited to even five or ten instances. Judge Quick has engaged in a long-standing course of misconduct, and he even continued to act outside the scope of his duty after the original Complaint in this matter was filed. These instances for violating one statute total some five hundred fifty-two (552), and each violation requires his removal from office. Furthermore, he violated another statute at least twenty-eight (28) times. It is this type of behavior that warps citizens' perceptions of justice in our judicial system, and strips the system of credibility and integrity.
In re Quick, 553 So.2d at 525-26 (emphasis in original) (citations omitted). See also Hopkins, 590 So.2d at 866 ("[a]n isolated incident of misconduct may have justified a public reprimand").
¶ 26. In the present case, the conduct of Judge Guest took place during a single in-court incident. The incident, however, involved physical contact with a defendant and inappropriate language in the court room. There were also allegations of racially derogatory remarks by the judge both in and out of the courtroom. Whether a judge gets two bites of this apple is a question never before put to this Court.
¶ 27. In determining whether the actions of Judge Guest warrant removal, however, we take into account the mitigating circumstances offered by Judge Guest. The judge offered evidence that during his eleven years as a justice court judge, he has only one previous complaint which was ruled to be frivolous. Also, due to the illness of the other justice court judge, Judge Guest had been handling the entire caseload for six to eight weeks around the time of the incident in question. He further stated that he was in ill health and was depressed because of recent deaths in his immediate family.
¶ 28. As to the racial component of the charges, this Court also notes that neither the three-member Committee nor the full Commission found that Judge Guest used racial epithets during the courtroom incident. While the Committee found that the judge knew the defendant from previous business dealings and that racial epithets were used on that occasion, the Commission declined to unqualifiedly adopt the Committee's finding *332 on this point and softened the Committee's language in regard to this alleged prior incident involving racial slurs.[3] Had the Commission found that Judge Guest made racial remarks in addition his physical confrontation of the defendant, the case for removal would be much stronger. In light of the totality of circumstances, however, we conclude that removal is not an appropriate sanction.

VI.
¶ 29. For the foregoing reasons, this Court follows the recommendation of the Commission on Judicial Performance. It is hereby ordered that Judge Jerry W. Guest be suspended for ninety days without pay, fined $1,500.00, and assessed all costs of this proceeding, which total $839.65.
¶ 30. JERRY W. GUEST IS HEREBY SUSPENDED FOR NINETY DAYS WITHOUT PAY, FINED $1,500.00 AND ASSESSED ALL COSTS OF THIS PROCEEDING WHICH TOTAL $839.65.
PRATHER, C.J., SULLIVAN and PITTMAN, P.JJ., JAMES L. ROBERTS, Jr., SMITH, MILLS and WALLER, JJ., concur.
McRAE, J., not participating.
NOTES
[1] Judge Guest stated that he was kicked by Thomas during the fight, and that this is the reason he cursed the defendant.
[2] It is also worth noting that by cursing in the crowded courtroom, the judge publicly committed the very offense for which he had just found a defendant guilty. See Miss.Code Ann. § 97-29-47 (1994). This, in itself, renders the judiciary a subject of derision and undermines public respect in the laws.
[3] The transcript of the hearing consisted only of the testimony of Judge Guest and Orlando Thomas. Thus, there is no impartial testimony regarding the incidents in question. While Judge Guest originally denied that he knew Thomas, Thomas testified after Guest and told the Committee of the prior incident. Since Guest was not called back for rebuttal and there was no other rebuttal testimony, Thomas' testimony stands unrefuted. This alleged prior incident was not a part of the charge under consideration, however.