KING, JUSTICE,
FOR THE COURT:
¶ 1. The Mississippi Commission on Judicial Performance recommends . to this Court that former Madison County Justice Court Judge William “Bill” Weisenberger Sr. be removed from office after finding by clear and convincing evidence that Weisen-berger physically and verbally assaulted a mentally disabled individual at the 2014 Canton Flea Market. Because of the egregious nature of Weisenberger’s actions, this Court agrees with the Commission’s recommendation and removes Weisenber-ger from office. Weisenberger is directed to pay a fine in the amount of $1,000 and costs of these proceedings in the amount of $5,918.46.
FACTS AND PROCEDURAL HISTORY
¶ 2. The Commission on Judicial Performance filed a Formal Complaint against Weisenberger on October 14, 2014, charging Weisenberger with three counts of judicial misconduct constituting willful misconduct in office and conduct prejudicial- to the administration of justice which brings the judicial office into disrepute .in violation of Section 177A of the Mississippi Constitution. The first charge derived from events that occurred at the Canton Flea Market on May 8, 2014. Specifically, the Commission alleged that .Weisenberger had physically assaulted a mentally handicapped African-American male and had directed racial slurs toward him and that, the same day, Weisenberger had argued with a female vendor and stated to the vendor’s husband that “he did not take orders from a woman.” The second charge alleged that Weisenberger had issued disparate sentences based on race- while presiding over the criminal docket of the Madison County Justice Court. Count three alleged that Weisenberger had issued a warrant for the arrest of an African-American male for the nonexistent charge of “Roaming Cattle.”
¶ 3. As a result of the allegations, in July or August of 2014, Weisenberger took a voluntary leave of absence from the bench, Weisenberger was indicted in January 2015 for “purposely, knowingly, willfully, unlawfully and feloniously causing] bodily injury to [Eric] Rivers, a vulnerable person.”[1] Thereafter,- on February 13,. 2015, the Commission filed a Petition for Interim Suspension, recommending that this Court suspend Weisenberger, without pay, pending the outcome of the Formal Complaint. This Court issued an order on March 26, 2015, granting the Commission’s' recommendation to suspend Weisenberger temporarily but denying the Commission’s recommendation for the suspension to be without pay.
¶ .4. On June 23-24, .2015, the Commission conducted a hearing before a Commit *447 tee comprised of Presiding Member Justice Court Judge Edwin Woods; Vice-Chairman Rick Coulter; and Lay Member Jeff Adcock. Twenty-one witnesses provided sworn testimony.
¶ 5. The Committee issued its Findings of Fact and Recommendations on November 16, 2015. The Committee recommended dismissal of three counts of the Formal Complaint, because clear and convincing evidence had not been adduced at the hearing that Weisenberger had violated the Mississippi Code of Judicial Conduct as charged: Count One, as it pertained to Kelly Ray, that Weisenberger had stated that he would talk to Ray’s husband because “he did not take orders from a woman”; Count Two, that Weisen-berger had issued disparate sentences based on race while presiding over the criminal docket of the Madison County Justice Court; and Count Three, that Weisenberger had issued a warrant for -the nonexistent charge of “Roaming Cattle.”
¶ 6. The Committee next recommended that Count One, as it pertained to Eric Rivers and the charge that Weisenberger had physically assaulted and directed racial slurs at a mentally handicapped African-American male, be sustained because the evidence clearly and convincingly showed that Weisenberger had violated the' Mississippi Code of Judicial Conduct. The Committee found that Weisenberger had been working at the Canton Flea Market on May 8, 2014, by directing traffic and assisting with the parking of vehicles. Weisenberger was dressed in khaki battle dress uniform (“BDUs”) and a dark blue shirt with the Seal of the State of Mississippi embroidered on it, which gave Weisenberger the appearance of a deputy sheriff or security officer. He also had a firearm and a pocket knife on his person. On that day, Madison County Deputy Sheriff Brad Sullivan had observed then-twenty-three-year-old Rivers inappropriately touching a black female and had ordered Rivers to leave the area. Deputy Sullivan walked with Rivers to ensure that he left, the area. Later that day, Deputy Sullivan again saw Rivers inappropriately touching other black females and again directed him to leave the area. Deputy Sullivan did not arrest Rivers and no. victims filed charges.against him.
¶ 7. After the second time Deputy Sullivan directed Rivers to leave the area, Deputy Sullivan used his radio to alert other security staff members about Rivers’s presence. Weisenberger heard the radio transmission, briefly encountered Rivers, slapped him in the back of the head, called Rivers a ⅛*****,” and directed Rivers to run in the direction that Weisenberger indicated to him. This happened in the early afternoon hours of May 8, 2014. The Committee additionally found that Rivers has no obvious physical disabilities; however, he regularly had been treated for mental problems and a learning disability and took two medications. On November 16, 2015, the Committee recommended that Weisenberger be suspended for 180' days without pay and that Weisenberger be assessed all costs and expenses incurred in this proceeding.
¶ 8. Weisenberger objected to the Committee’s Findings, arguing that the allegations concerning Rivers had not been established by clear and convincing evidence and that the Committee had not set forth any facts to support its findings. Weisen-berger also, objected to the Committee’s Recommendations, arguing that he had been defeated at the polls and would no longer be a justice court judge after January 2016.
¶ 9. The Commission unanimously adopted the Committee’s findings but disagreed as to the recommendation. On December 17, 2015, the full Commission *448 found that Weisenberger’s conduct was so egregious that it would be error to recommend anything short of removal from office. The Commission recommended that Weisenberger be: 1) removed from office; 2) assessed a fine of $1,000; and 3) assessed costs of this proceeding in the amount of $5,918.46. After conducting a de novo review of the record, this Court agrees with the Commission and adopts the Commission’s findings and recommended sanctions.
ANALYSIS
¶ 10. Section 177A of the Mississippi Constitution provides that the Commission may make a recommendation to this Court to “remove from office, suspend, fine, or publicly censure or reprimand any justice or judge of this state ....” Miss. Const, art. 6, § 177A. This Court, accords “careful consideration of the findings .of fact and recommendations of the Commission, or its committee.” Miss. Comm’n on Judicial Performance v. Walker, 172 So.3d 1165, 1167 (Miss. 2015). However, this Court may “accept, reject or modify, in whole or in part, the findings and recommendations of the Commission.” In re Anderson, 412 So.2d 743, 746 (Miss. 1982). In doing so, this Court must make its “own, independent evaluation of the record evidence .... ” Id. (quoting Geiler v. Comm’n on Judicial Qualifications, 10 Cal.3d 270, 110 Cal.Rptr. 201, 515 P.2d 1, 4 (1973).
¶ 11. The Commission alleges that Weis-enberger’s conduct violated Canons 1,' 2A, and 4A of the Code of Judicial Conduct, which constituted a violation of Section 177A of the Mississippi Constitution. Weis-enberger now argues that the Commission’s Findings of Fact, Conclusions of Law, and Recommendations are not supported by clear and convincing evidence.
I. Whether Weisenberger committed misconduct.
¶ 12. The Commission found that Weis-enberger had slapped Rivers in the back of the head, had directed a racial slur at Rivers, and had told Rivers to run in a certain direction. This Court agrees that these allegations are supported by clear and convincing evidence. This Court has found willful misconduct in office to be:
the improper or wrong use of power of his office by a judge acting intentionally or with gross unconcern for his conduct and generally in bad faith. It involves more than an error of judgment or a mere lack of diligence. Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption, and also any knowing misuse of the office, whatever the motive. However, these elements are not necessary to a finding of bad faith. A specific intent to use the powers of judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith....
Willful misconduct in office of necessity is conduct prejudicial to the administration of justice which brings the judicial office into disrepute. However, a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute.
Miss. Comm’n on Judicial Performance v. Harris, 131 So.3d 1137, 1142 (Miss. 2013) (quoting In re Quick, 553 So.2d 522, 524 (Miss. 1989)).
¶ 13. Canon 1 of the Code of Judicial Conduct requires a judge to preserve the integrity and independence of the judiciary. It states that “an independent and honorable judiciary is indispensable to jus *449 tice in our society.” Canon 2(A) requires a judge to respect and comply with the law and to “act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.” The commentary to Canon 2(A) states that “the prohibition against behaving with impropriety or the appearance of impropriety applies to both the professional and personal conduct of a judge.”[2] Canon 4(A) states that a judge1 must conduct all extrajudicial activities so that they do not: “(1) cast reasonable doubt on the judge’s capacity to act impartially as a judge; (2) demean the judicial " office; or (3) interfere with the proper performance of judicial duties.”
¶ 14. At the Canton Flea Market, Weis-enberger admittedly was'wearing a shirt that bore the state seal of Mississippi and that was labeled “Madison County Justice Court.” He was carrying a sidearm and a pocket knife on his person. Although Weis-enberger was not a security officer and was not hired to conduct security, he purposefully and intentionally interfered in the situation with Rivers, using aggression and bigotry, and willingly chose not to wait for a hired security guard or law enforcement officer. Clearly Weisenberger’s actions were inexcusable and rise to the level of willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute. Weisenberger’s actions failed to promote confidence in the integrity of the judiciary in violation of Canons 1 and 2(A). These Canons apply to a judge’s personal, as well as professional, conduct. His extrajudicial conduct toward an individual whom he most likely knew was mentally disabled demeaned the judicial office and cast reasonable doubt on Weisenberger’s capacity to act impartially, also violating Canon 4(a).
¶ 15. Thus, Weisenberger violated Canons 1, 2A, and 4(a) of the Mississippi Code of" Judicial Conduct, constituting willful misconduct and conduct prejudicial to the administration of justice, under Article 6, Section 177A of the Mississippi Constitution of 1890, as amended.
II. Whether the recommended sanction is appropriate.
¶ 16. The sanctions for judicial misconduct should be proportionate to the judge’s offense. Miss. Comm’n on Judicial Performance v. Thompson, 169 So.3d 857, 869 (Miss.2015). This Court applies a six-factor test to determine the appropriate sanctions, which considers:
(1) the length and character of the judge’s public service; (2) whether there is any prior caselaw on point; (3) the magnitude of the offense and the harm suffered; (4) whether the misconduct is an isolated incident or evidences a pattern of conduct; (5) whether the conduct was willful, intended to deprive the public of assets, or if it exploited the judge’s position; and (6) the presence or absence of mitigating or aggravating factors.
Id. (quoting Miss. Comm’n on Judicial Performance v. Skinner, 119 So.3d 294, 300 (Miss. 2013)). “The purpose of sanctions in cases of judicial discipline is to preserve the integrity and independence of the judiciary and to restore and reaffirm public confidence in the administration of justice.” Miss. Comm’n on Judicial Performance v. Guest, 717 So.2d 325, 328-29 (Miss. 1998) (quoting Miss. Comm’n on Judicial Performance v. Milling, 651 So.2d 531, 538-39 (Miss. 1995)). “Judges are called upon to exemplify the highest *450 standards of conduct in a variety of situations and have a duty to conduct themselves with respect for those they serve .... ” Miss. Comm’n on Judicial Performance v. Lewis, 913 So.2d 266, 273 (Miss. 2005).
A. The Length and Character of Weis-enberger’s Public Service
¶ 17. Weisenberger’s tenure as a justice court judge started in January 2012. Weisenberger took a voluntary leave of absence from the bench in July or August 2014, after, the Canton Flea Market allegations. On February 10, 2015, Weisenberger was formally indicted by the Madison County Grand Jury for his actions at the flea market. This Court suspended Weisenberger from office with pay on March 26, 2015. He was not reelected in the November 2015 election and is no longer serving as a justice court judge.
B. Prior Caselaw on Point
¶ 18. Previously, this Court has been faced with allegations of physical assault and the use of racial slurs in Mississippi Commission on Judicial Performance v. Guest, 717 So.2d 325 (Miss. 1998). In that case, after a. defendant repeatedly was rude to the judge in court, Judge Jerry W. Guest left the bench, put the defendant in a headlock, and struck the defendant. Id. at 329. Judge Guest was not removed from office but was suspended' for ninety days without pay, fined $1,500, and assessed costs of the proceeding in the amount of $839.65. Id. at 332. This Court stated that “in light of the emphasis which the law places on the public’s perception of the legal system, the fact that Judge Guest’s misconduct took place during proceedings in a crowded courtroom has special impact on the choice of an appropriate sanction.” Id. at 329. The Court emphasized that “[a] judge’s willing involvement in a physical altercation warrants serious discipline.” Id. at 330. Judge Guest was not removed from office because of mitigating factors:
In determining whether the actions of 'Judge Guest warrant removal, however, we take into account the mitigating circumstances offered by Judge Guest. The judge offered evidence that during his eleven years as a justice court judge, he has only one previous complaint which was ruled to be frivolous. Also, due to the illness of the other justice court judge, Judge Guest had been handling the entire caseload for six to eight weeks around the time of.the incident in question. He further stated that he was in ill health and was depressed because of recent deaths in his immediate family.
Id. at 331.
¶ 19. In other jurisdictions, the West Virginia Supreme Court suspended a magistrate for six months without pay after the magistrate physically assaulted and yelled profanity at the band director during a high school, football game. In re Gorby, 176 W.Va. 11, 339 S.E.2d 697 (1985). In New York, a judge was removed from office after accusing four youths of breaking glass in a parking lot, striking two of them, using vulgar and derogatory language, and uttering racial epithets. Kuehnel v. State Comm’n on Judicial Conduct, 49 N.Y.2d 465, 426 N.Y.S.2d 461, 403 N.E.2d 167, 167-68 (Miss. 1980). And in another New York case, a town court justice was removed from office after confronting several African-American men in a bar, loudly proclaiming he was a judge, using abusive and profane language, and announcing what he would do if any of the African-American patrons appeared before him in court. Matter of Cerbone, 61 N.Y.2d 93, 472 N.Y.S.2d 76, 460 N.E.2d 217, 218 (1984) (“respect for the judiciary is better fostered by temperate conduct, not by hotheaded reactions to goading remarks in a bar”).
*451 ¶ 20. The mitigating factors present in Guest cannot be found here. Weisenberger resolutely denies the allegations against him. He had served less than three years on the bench at the time of the incident and offered no evidence of mitigating circumstances. In addition, in this case, the testimony showed clear and convincing evidence of Weisenberger’s use of a racial slur. The Guest Court stated that “had the Commission found that Judge Guest made racial remarks in addition [to] his physical confrontation of the defendant, the case for removal would be much stronger.” Guest, 717 So.2d at 332.
¶21. Even though Weisenberger was not reelected and no longer holds office, this Court previously has sanctioned or removed a judge from an office that the judge no longer held. The Osborne Court found that this Court is not limited “in its available constitutional sanctions against a judge when the judge either resigns from office or is voted out of office by his or her constituents, and effectively removed. ...” Miss. Comm’n on Judicial Performance v. Osborne, 16 So.3d 16, 25 (Miss. 2009). Solomon C. Osborne was removed from office despite his earlier resignation as county court judge. Id. In Dodds, the.judge was removed from office despite no longer being in office and not running for reelection. Miss. Comm’n on Judicial Performance v. Dodds, 680 So.2d 180, 182 n.l (Miss. 1996). Similarly, Bobby B. DeLaughter was removed from office despite previously having resigned. Miss. Comm’n on Judicial Performance v. DeLaughter, 29 So.3d 750, 755 (Miss. 2010). And in Boland I, this Court publicly reprimanded and assessed costs to a judge who recently had lost an election. Miss. Comm’n on Judicial Performance v. Boland, 975 So.2d 882, 893-94 (Miss. 2008). Therefore, this Court’s precedent allows Weisenberger’s removal from an office that he no longer holds.
C. Magnitude of the Offense and Harm Suffered
¶ 22. Weisenberger physically assaulted and verbally abused a mentally handicapped individual at an event that was attended by tens of thousands of people. Weisenberger purposefully injected himself into the situation even though he was not hired to provide security. The incident in no way occurred in a private setting and warranted public outrage. The evidence also showed that it was apparent that Rivers was mentally disabled as soon as he spoke, so Weisenberger most likely knew that Rivers was mentally disabled. Rivers’s father, James Rivers, testified that his son was “shaky a little bit” afterwards and “kind of scared and nervous like.” He additionally testified that Rivers did not like to leave the house for a little while after the incident occurred.
¶ 23. Of equal importance, knowledge of Weisenberger’s conduct was widespread and included reports in local newspapers, coverage on the local news, radio station discussions, and internet chatter. Susan McCarty, Clerk of the Madison County Justice Court, testified that calls about the allegations greatly interfered with court business. And although this Court agrees with the Commission’s finding that there was not clear and convincing evidence that Weisenberger had committed judicial misconduct in relation to Ray, the evidence showed that Weisenberger did engage in a verbal shout-out with Ray at an extremely crowded event. “Most citizens’ primary, and perhaps only, contact with the law is through justice court; for that reason, justice court judges must ‘regard scrupulously’ their office. If justice court judges do not exhibit professionalism, there is little chance that our citizenry will understand and respect the legal process.” Miss. Comm’n on Judicial Performance v. Bustin, 71 So.3d 598, 604-05 (Miss. 2011).
*452 D. Misconduct an Isolated Incident or Pattern of Conduct
¶ 24. This was the first time that Weis-enberger had been brought before this Court for judicial misconduct.
E. Whéther the conduct was willful, intended to deprive the public of assets, or exploited the judge’s position.
¶ 25. Weisenberger’s conduct clearly was willful. Weisenberger was not hired to. provide security for the Canton Flea Market, yet he was dressed like a security officer and was carrying a gun and had. a radio. Additionally, although Weisenberger knew he was not hired to provide security, he heard Deputy Sullivan’s transmission over the radio and purposefully injected himself into the situation instead of waiting for hired security officers. Weisenberger took it upon himself to initiate contact and unreasonably inflict physical injury upon Rivers. In addition, Weisenberger yelled a racial slur at Rivers, a completely inappropriate and intentional action thát heightened the injury that Weisenberger inflicted. And instead of calling for security when Rivers did not walk in the direction in which Weisenberger had no authority to direct him, Weisenberger repeatedly made contact with Rivers and forced him to comply to Weisenberger’s wishes. Moreover, throughout the interaction, Weisenberger was wearing a shirt that said “Madison County Justice Court.” Thus, Weisenber-ger’s actions clearly were willful.
F. Mitigating or Aggravating Factors
¶ 26. Weisenberger has not shown mitigating factors. The sheer number of people who attended the event and who witnessed Weisenberger’s aggressive behavior, along with Weisenberger’s use of a racial slur, are aggravating factors.
CONCLUSION
¶ 27. Weisenberger’s egregious actions clearly constituted willful misconduct and conduct prejudicial to the administration of justice which brings the judicial office into disrepute in violation of Canons 1, 2(A), and 4(A) of the Mississippi Code of Judicial Conduct and Section 177A of the Mississippi Constitution. Accordingly, this Court imposes the sanctions of removal of office, a $1,000 fine, and costs of these proceedings in the amount of $5,918.46. The Clerk of this Court shall • send copies of this opinion and the mandate of this Court to the Chancery Clerk of Madison County, the Circuit Clerk of Madison County as well as to the Madison County Justice Court Clerk, the County Administrator of Madison County, and the Madison County Board of Supervisors.
¶ 28. MADISON COUNTY JUSTICE COURT JUDGE WILLIAM “BILL” WEISENBERGER SHALL BE REMOVED FROM OFFICE EFFECTIVE ON THE DATE OF ISSUANCE OF THIS COURT’S MANDATE, FINED $1,000, AND ASSESSED COSTS IN THE AMOUNT OF $5,918.46.
WALLER, C.J., RANDOLPH, P.J., LAMAR, KITCHENS, MAXWELL AND BEAM, JJ., CONCUR. COLEMAN, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., RANDOLPH, P.J., LAMAR, MAXWELL AND BEAM, JJ. DICKINSON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.
WALLER, C.J., RANDOLPH, P.J., LAMAR, MAXWELL AND BEAM, JJ., JOIN THIS OPINION.

. Weisenberger pleaded guilty to simple assault and, on June 22, 2016, was sentenced to serve six months in the custody of the Madison County . Jail with six months suspended, followed by three months of supervised pro-batíon and three months of unsupervised probation. Attorney General Jim Hood released a public statement afterward, saying that Weis-enberger had “agreed to never seek public office or work in law enforcement again.”

. “The test for appearance of impropriety is whether, based on the conduct, the judge’s impartiality might be questioned by a reasonable person knowing all the circumstances.”