[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 324 
¶ 1. The Mississippi Commission on Judicial Performance ("the Commission") filed a formal complaint charging Frank L. Sutton, Sr., justice court judge for District Three of Hinds County, Mississippi, with willful misconduct in office and conduct prejudicial to the administration of justice which brings the office into disrepute, and is actionable pursuant to the provisions of Article 6, Section 177A for the Mississippi Constitution of 1890, as amended. A three-member committee conducted an evidentiary hearing on July 18, 2007, and found that Judge Sutton's conduct warranted a public reprimand and assessment of costs in the amount of $1,900.89. The full Commission adopted the Findings of Fact, Conclusions of Law, and Recommendation of the committee. The Commission's recommendation is now before this Court pursuant to Rule 10 of the Rules of the Mississippi Commission on Judicial Performance.
 FACTS ¶ 2. The Commission filed a formal complaint against Sutton on April 3, 2006, charging him with two counts of willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute in violation of the Code of Judicial Conduct and is actionable pursuant to the provisions of Article 6, Section 177A of the Mississippi Constitution of 1890. The charges stem from Sutton's conduct in three cases over which he presided in the Hinds County Justice Court.
A. Count 1: Ellis Realty Co. v. Onterrio Jones
 ¶ 3. On October 24, 2005, Sutton entered judgment in favor of the plaintiff in the case of Ellis Realty Company v.Onterrio Jones, Docket 2550, Page 891, for past-due rents and removal of the defendant tenant from the Plaintiffs apartment complex. On December 8, 2005, Sutton signed a warrant of removal to evict the defendant by 5:00 p.m. on that date.
 ¶ 4. The Commission found that, at approximately 4:30 p.m. on December 19, 2005, Sutton (or a Hinds County Justice Court employee at Sutton's request) contacted Clifford Acey of Ellis Realty and reported that Sutton had spoken with the evicted tenant, had decided to stay the Warrant of Removal, and demanded that Acey return the tenant's apartment key to the court. *Page 325 
 ¶ 5. Acey testified that Sutton called Acey's cellular phone and relayed this information. Acey stored Sutton's number in his cellular phone as proof that the call occurred. Lakesha Bell-Wilson, assistant clerk for the Hinds County Justice Court, later confirmed that the number was Sutton's cellular phone number. Sutton disputes this fact, stating that he never talked to Acey other than during the justice court hearing.
 ¶ 6. On December 20, 2005, Acey received a facsimile from the Hinds County Justice Court demanding that Acey return the tenant's key to the court or face arrest for contempt. The facsimile was signed by Bell-Wilson. Bell-Wilson testified that Sutton requested she send the facsimile, but she was unsure if Sutton had spoken to either or both of the parties prior to sending the facsimile.
 ¶ 7. Sutton testified that he ordered Acey to return the apartment key because Acey had failed to reasonably accommodate the tenants, who had tried to make partial rent payments. Sutton stated that he learned about the partial payments from a court clerk, although he could not remember exactly which clerk.
 ¶ 8. Acey testified that he met Sutton in the hallway outside Sutton's office and delivered the apartment key. Sutton denied meeting Acey in the hallway and stated that he "never saw the keys." Bell-Wilson testified that she received the keys, but she could not remember if she received them directly from Acey. Sutton and Acey both stated that during the justice court eviction hearing, Acey promised to "work with the tenants" who were struggling to cope with the effects of Hurricane Katrina.
 ¶ 9. The defendant tenant remained in possession of the apartment after Sutton stayed the warrant of removal. After the defendant failed to pay November and December 2005 rents, Acey and Ellis Realty instituted another suit in Hinds County Justice Court to remove him from the apartment.
 B. Count 2: The Village Apartments v. Cynthia Baugh, and the Village Apartments v. Cynthia Watkins
 ¶ 10. On December 12, 2005, Sutton presided over the cases of The Village Apartments v. Cynthia Baugh, Docket 2531, Page 72, and The Village Apartments v. CynthiaWatkins, Docket 2531, Page 194. The plaintiffs were represented by David Dogan. In both cases, the plaintiff sought to remove the defendants from their apartments due to alleged lease violations, which did not involve past-due rent.
 ¶ 11. After hearing testimony on Watkins's case, Sutton told the parties he wished to inspect Watkins's apartment and instructed the parties to meet him at the office of the apartment complex during the noon recess. Sylvia Carraway, president of the Village Apartments, Dogan, the apartment manager, and two apartment security guards waited for Sutton during the recess, but Sutton failed to appear. Dogan attempted to contact Sutton twice while the parties were waiting by calling Sutton's office at the Hinds County Justice Court. Dogan then returned to the court for a hearing at 1:30 p.m. Sutton testified that he was unable to attend the noon meeting but never explained the reason for his absence.
 ¶ 12. The Commission found that Sutton publicly chastised Dogan in open court before a courtroom crowded with spectators and litigants for attempting to contact Sutton during the noon recess. This finding is supported by Dogan's testimony that he felt "abused in front of an absolute[ly] packed courtroom." Dogan also stated, "Judge Sutton's got [such] a commanding voice that there wasn't anybody that was listening that didn't hear that this lawyer had been just absolutely put down." Sutton *Page 326 
disputes this finding, claiming that he did not publicly chastise Dogan because his admonishment of Dogan took place at the bench.
 ¶ 13. After allegedly admonishing Dogan, Sutton ruled that both cases were to be held in abeyance. A note in the docket on December 13, 2005, in Watkins's case reflects this ruling: "abeyance — six months if she complies — dismiss after time expires." On March 27, 2006, Sutton entered judgment for the plaintiff in the Watkins case. A note in the docket in Ms. Baugh's case states, "Hold in abeyance for three months. If Baugh complies, the removal will be dismissed." The Commission found that Sutton failed to make a final ruling in either case, each case being held in abeyance for a specific period of time while the tenants continued to live in their respective apartments.
 ¶ 14. On December 13, 2005, the day after the hearing, Sutton visited the Village Apartments to inspect the apartments of Baugh and Watkins. Sutton called ahead to notify the apartment manager of the visit, but Dogan, the Village Apartments' attorney, was not present during the visit. Sutton visited Watkins's apartment and told Watkins he was holding her case in abeyance.
 STANDARD OF REVIEW ¶ 15. "This Court reviews the recommendations of the Mississippi Commission on Judicial Performance de novo."Miss. Comm'n on Judicial Performance v. Osborne,977 So.2d 314, 2008 WL 252011 ¶ 12 (Miss. Jan. 31, 2008) (citing Miss. Comm'n on Judicial Performance v. Gunn,614 So.2d 387, 389 (Miss. 1993)). "While it is true that this Court is the trier of fact in judicial misconduct proceedings and may impose additional sanctions, it nonetheless gives great weight to the findings of the Commission which has had the opportunity to observe the demeanor of the witness."Id. (quoting In re Garner, 466 So.2d 884, 885
(Miss. 1985)). This Court is obligated to render an independent judgment on the charges. Miss. Comm'n on JudicialPerformance v. Fowlkes, 967 So.2d 12, 15 (Miss. 2007) (citing Miss. Comm'n on Judicial Performance v.Gibson, 883 So.2d 1155, 1157 (Miss. 2004)).
 ANALYSIS ¶ 16. The commission found by clear and convincing evidence that Sutton's conduct violated Code of Judicial Conduct Canons 1, 2A, 3B(2), 3B(4), 3B(7), 3B(8), and 3C(1). The Commission further found that this conduct was actionable pursuant to Article 6, Section 177A of the Mississippi Constitution, which states that a judge may be removed, suspended, fined, publicly censured, or publicly reprimanded by the Supreme Court.Fowlkes, 967 So.2d at 15.
 ¶ 17. Our Constitution provides that proper grounds for sanctioning a judge include willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute. Intentional misconduct is not required; rather, a judge may "through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute." Miss. Comm'n onJudicial Performance v. McPhail, 874 So.2d 441, 444
(Miss. 2004).
 I. Did Judge Sutton's conduct constitute willful misconduct in office and conduct prejudicial to the administration of justice which brings the office into disrepute in violation of the Code of Judicial Conduct?
 ¶ 18. The Commission found that Sutton's conduct violated Code of Judicial *Page 327 
Conduct Canons 1, 2A, 3B(2), 3B(4), 3B(7), 3B(8), and 3C(1).
1. Canon 1
 ¶ 19. Canon 1 of the Code of Judicial Conduct states that a judge should uphold the integrity and independence of the judiciary. Clearly, Sutton failed to observe high standards of conduct by engaging in ex parte communications with litigants, creating the perception that his decisions were not made independently and that he would not deal honestly with all litigants in his court.
2. Canon 2A
 ¶ 20. Canon 2A states that a judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. The Commission's finding that Sutton issued orders based on information obtained from ex parte communications with tenants, supports its finding of a violation of Canon 2A. This conduct caused Sutton's impartiality to be called into question. According to the Commission's findings, Sutton's conduct in all three cases indicated partiality towards the tenants and did not promote public confidence in his integrity and impartiality.
3. Canon 2B
 ¶ 21. Canon 2B states that judges shall not allow their family, social, or other relationships to influence the judges' judicial conduct or judgment. The Commission found that Sutton issued orders based on ex parte communications with tenants, which would create the impression that the tenants had an undue influence on his decision-making process. There is no evidence in the record that Sutton actually had any personal relationships with any of the involved parties.
Canon 3B(2)
 ¶ 22. Canon 3B(2) provides that a judge shall be faithful to the law and maintain professional competence in it, and a judge shall not be swayed by partisan interests, public clamor, or fear of criticism. The Commission argues that Sutton was unfaithful to the law because, under Count 1, he ordered a stay of the warrant of removal based on ex parte communications without allowing both parties the opportunity to be heard. The Commission also argues that under Counts 1 and 2, Sutton was unfaithful to the law because he never entered final judgments in either the Watkins case or the Baugh case.
5. Canon 3B(4))
 ¶ 23. Canon 3B(4) states that judges shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom they deal in their official capacities. The Commission's findings that Sutton failed to appear at the apartment inspection which he had scheduled, leaving an attorney and four a partment employees waiting without notification, and that Sutton loudly and publicly chastised an attorney in open court, evince a violation of Canon 3B(4).
6. Canon 3B(7)
 ¶ 24. Canon 3B(7) states that a judge shall accord to all who are legally interested in a proceeding, or their lawyers, the right to be heard according to law; a judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties.
 ¶ 25. The Commission concluded that Sutton violated Canon 3B(7) by speaking with the evicted tenant in the Ellis Realty case and using information from this ex parte conversation in making his decision *Page 328 
to stay the warrant of removal. In addition, the Commission argues that Sutton engaged in ex parte communications when he visited Watkins's apartment while Watkins and the apartment manager were present and Dogan, the Village Apartments' attorney, was absent. The Commission's findings support a violation of Canon 3B(7).
7. Canon 3B(8)
 ¶ 26. Canon 3B(8) provides that a judge shall dispose of all judicial matters promptly, efficiently, and fairly. The Commission concluded that under Count 1, Sutton violated this Canon by unfairly staying the warrant of removal, causing the plaintiff to lose rent for the apartment and incur the expense of filing another suit for eviction.
 ¶ 27. Under Count 2, the Commission found that Sutton failed to dispose of judicial matters promptly when he held two cases in abeyance and failed to issue a final judgment.
8. Canon 3C(1)
 ¶ 28. Canon 3C(1) states that a judge shall diligently discharge administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and shall cooperate with other judges and court officials in the administration of court business.
 ¶ 29. The Commission concluded that Sutton's ex parte communications violated Canon 3C(1) because these communications created a bias for the defendants. Sutton's behavior in all three cases calls into question his competence, diligence, and impartiality in carrying out his administrative responsibilities.
 ¶ 30. As noted above, Sutton disputes each of the Commission's findings of fact. Sutton argues that he did not engage in ex parte communications with tenants and that the Commission failed to base its findings on credible evidence, stating that the Commission's conclusions were based upon "innuendo and suspicions or suppositions." Sutton also claims that he did not publicly chastise Dogan, and that holding the cases in abeyance constitutes a final ruling.
 ¶ 31. The Commission issued its findings of facts and recommendations to this Court after an evidentiary hearing in which Sutton and seven other witnesses testified. The Commission heard direct and cross examination of the parties and also asked its own questions. The Commission was able to observe the general demeanor of the witnesses and issued its findings of fact after considering their testimony.
 ¶ 32. Judge Sutton denies that he committed any wrongdoing. Instead, he offers explanations and excuses for every act, and denials for most. Sutton argues that the Commission came to the wrong findings of fact, but Sutton's arguments are primarily based on his own testimony before the Commission. Sutton's argument fails because the Commission's findings are supported by the evidence. Based on the totality of the record before us, this Court adopts the Commission's findings that Sutton's conduct violated the Code of Judicial Conduct and constituted both willful misconduct in office and conduct prejudicial to the administration of justice.
 II. Is the Commission's recommendation that Sutton be publicly reprimanded and assessed costs in the amount of $1,900.89 appropriate?
 ¶ 33. Pursuant to this Court's holding in MississippiCommission on Judicial Performance v. Gibson,883 So.2d 1155, 1157-8 (Miss. 2004), we must examine *Page 329 
the following factors when considering the appropriateness of sanctions in judicial misconduct proceedings:
 1. The length and character of the judge's public service.
 ¶ 34. Sutton was appointed to the bench in the spring of 2005 and was later elected to office.
2. Whether there is any prior case law on point.
 ¶ 35. This Court has decided a number of cases in which a public reprimand and an assessment of costs were appropriate sanctions for conduct factually similar to Sutton's. SeeMiss. Comm'n on Judicial Performance v. Lewis,801 So.2d 704 (Miss. 2001) (public reprimand and assessment of costs were appropriate sanctions for ex parte communications); Miss.Comm'n on Judicial Performance v. Russell,691 So.2d 929 (Miss. 1997) (judge's improper release of prisoners and ex parte communications warranted public reprimand and fine);Miss. Comm'n on Judicial Performance v. Underwood,644 So.2d 458 (Miss. 1994) (ex parte communications warranted $250 fine and public reprimand).
 3. The magnitude of the offense and the harm suffered.
 ¶ 36. As a result of Sutton's conduct relating to Count 1, the plaintiff lost possession of the tenant's apartment and had to institute another suit for eviction and past rents that the tenant never paid.
 ¶ 37. Under Count 2, Sutton made the Village Apartment employees and their attorney wait when Sutton failed to show up for the inspection he scheduled. Sutton also chastised Dogan in front of a crowded courtroom. Further, the plaintiffs in these cases were prejudiced when Sutton refused to issue a final order in their cases, holding those cases in abeyance.
 4 Whether the mistake is an isolated incident or evidences a pattern of conduct.
 ¶ 38. Sutton previously received a private reprimand for conduct unrelated to this case; however, he has now committed the aforementioned acts in three additional cases spanning a period of several months. From the record before us, we thus conclude that Judge Sutton's conduct evidences a pattern of conduct which must immediately cease.
5. Whether moral turpitude was involved.
 ¶ 39. The parties agree that no moral turpitude was involved, and from today's record, we agree. Compare Comm'non Judicial Performance v. Sanford, 941 So.2d 209, 216-17
(Miss. 2006).
 6. The presence or absence of mitigating or aggravating circumstances.
 ¶ 40. In his brief, Sutton notes that he heard the cases involved in this matter "barely six months into his appointment as a justice court judge." This, however, does not qualify as a mitigating circumstance, because when Sutton accepted the office of justice court judge he accepted the responsibility of "becoming learned in the law." In re Quick,553 So.2d 522, 526 (Miss. 1989) (citing In re Bailey,541 So.2d 1036, 1039 (Miss. 1989)). Additionally, Sutton has not only shown no remorse for his conduct, he has taken every opportunity to deny any wrongdoing and to deny several material facts which the Commission decided adversely to him. This is an aggravating circumstance which we may consider in determining the appropriate punishment to impose for Sutton's conduct. Miss. Comm'n on Judicial Performance v. Osborne,977 So.2d 314, 326-27 (Miss. 2008). We previously have found *Page 330 
a judge's acknowledgment of "the inappropriateness of his conduct and agree[ment] with the findings of the Commission" to be a mitigating circumstance. Sanford,941 So.2d at 217. That acknowledgment is obviously lacking in this case.
 CONCLUSION ¶ 41. The Commission recommends that Sutton be publicly reprimanded and assessed costs in the amount of $1,900.89 After considering the Gibson factors, we find that the Commission's recommendation is both appropriate for Sutton's misconduct and consistent with other similar cases. Accordingly, this Court adopts the Commission's recommendation that Sutton be publicly reprimanded and assessed costs in the amount of $1,900.89. We order that this public reprimand shall be read in open court, when the venire panel meets, on the first day of the next term of the Circuit Court of Hinds County, with Judge Sutton present.
 ¶ 42. JUDGE FRANK L. SUTTON, SR., JUSTICE COURT JUDGEFOR HINDS COUNTY, DISTRICT THREE, SHALL BE PUBLICLY REPRIMANDEDIN OPEN COURT WHEN THE VENIRE PANEL MEETS BY THE PRESIDINGJUDGE OF THE HINDS COUNTY CIRCUIT COURT ON THE FIRST DAY OF THENEXT TERM OF THAT COURT AFTER THIS DECISION BECOMES FINAL ANDIS ASSESSED COSTS IN THE AMOUNT OF $1,900.89.
WALLER, P.J., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. SMITH, C.J., DIAZ, P.J., AND EASLEY, J., NOT PARTICIPATING.