# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-JP-00072-SCT

*MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE*

*v.*

*JUDGE FRANK SUTTON*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/09/2019 |
| TRIAL JUDGE: | HON. KENT McDANIEL |
| COURT FROM WHICH APPEALED: | MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE |
| ATTORNEYS FOR APPELLANT: | MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE BY: DARLENE D. BALLARD RACHEL W. MICHEL MEAGAN C. BRITTAIN |
| ATTORNEY FOR APPELLEE: | FRANK SUTTON (PRO SE) |
| NATURE OF THE CASE: | CIVIL - JUDICIAL PERFORMANCE |
| DISPOSITION: | SUSPENSION FROM OFFICE FOR THIRTY (30) DAYS WITHOUT PAY, PUBLIC REPRIMAND AND FINE OF $500 - 07/18/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     The Mississippi Commission on Judicial Performance (the "Commission") recommends that the Court publicly reprimand and assess a $500 fine against Judge Frank Sutton, a justice court judge for Post Three in Hinds County. The Commission made this recommendation after finding by clear and convincing evidence that Judge Sutton's conduct

constituted misconduct in violation of the Code of Judicial Conduct as well as Section 177A of the Mississippi Constitution of 1890.

¶2. We agree with the Commission that Judge Sutton's conduct constituted misconduct. We disagree with the Commission's imposition of sanctions. Instead, we order a public reprimand, fine Judge Sutton $500 and suspend Judge Sutton for thirty days without pay.

## FACTS AND PROCEDURAL HISTORY

¶3. Based on complaints against Judge Sutton, the Commission initiated an inquiry into his role in two matters. This investigation led to the Commission's filing a formal complaint. Judge Sutton did not file an answer to the complaint; instead, he and the Commission stipulated to agreed facts. The Commission then unanimously adopted those facts in its findings of fact and recommendation. The Commission recommended that Judge Sutton be publicly reprimanded and fined $500.

*Count One*

¶4. On January 31, 2018, Investigator Nick Brown with the Hinds County Sheriff's Department arrested and charged Amanda Howard with prostitution. Howard's hearing was scheduled for February 22, 2018. The day after Howard's arrest, Michael Liddell approached Judge Sutton in court and asked Judge Sutton if he could help Liddell with the charges pending against Howard. That afternoon, Judge Sutton called Investigator Brown and asked him if he could "help him out" on the prostitution charge against Howard because he knew her family. Investigator Brown told Judge Sutton that he would not "help him out" with the prostitution charge. That same day—February 1, 2018, Judge Sutton, *sua sponte* and without

2

a hearing, remanded Howard's prostitution charge to the file, subject to recall.

*Count Two*

¶5.    On June 26, 2018, Investigator Keith Burnett, with the Hinds County Sheriff's Department, arrested Barry Jones and charged him with possession of marijuana. Jones's mother, who is a parishioner at Fairfield Missionary Baptist Church where Judge Sutton serves as pastor, approached Judge Sutton and asked if he could help Jones. Judge Sutton called Investigator Burnett and inquired about Jones's arrest and pending charges. Judge Sutton asked about the weight of the marijuana collected from Jones and whether the charge was a misdemeanor or felony. Investigator Burnett informed Judge Sutton that 35.2 grams of marijuana had been collected from Jones's apartment and that he was charging Jones with "Possession of a Controlled Substance Felony." The record is silent as to what Judge Sutton did with this information.

**ANALYSIS**

¶6.    Section 177A of the Mississippi Constitution provides, in part,

> On recommendation of the commission on judicial performance, the Supreme Court may remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state for: (a) actual conviction of a felony in a court other than a court of the State of Mississippi; (b) willful misconduct in office; (c) willful and persistent failure to perform his duties; (d) habitual intemperance in the use of alcohol or other drugs; or (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute . . . .

Miss. Const. art. 6, § 177A.

¶7.    In a judicial-performance case, this Court conducts an independent review of the entire record and "makes the final determination as to the appropriate action to be taken when

3

a judge has committed willful misconduct or conduct prejudicial to the administration of justice that brings the judicial office into disrepute." *Miss. Comm'n on Judicial Performance v. Skinner*, 119 So. 3d 294, 299 (Miss. 2013) (citing *Miss. Comm'n on Judicial Performance v. Thompson*, 80 So. 3d 86, 88 (Miss. 2012)). Making the final determination, the Court "may accept, reject, or modify, in whole or in part, the findings and recommendation of the Commission." R. Miss. Comm'n on Judicial Performance 10E. Further, the Court is not bound by a joint recommendation between the Commission and the judge. *Skinner*, 119 So. 3d at 299 (citing *Miss. Comm'n on Judicial Performance v. Sanford*, 941 So. 2d 209, 217–18 (Miss. 2006)). "To impose sanctions, the Court 'must find clear and convincing evidence of misconduct.'" *Miss. Comm'n on Judicial Performance v. Shoemake*, 191 So. 3d 1211, 1216 (Miss. 2016) (quoting *Miss. Comm'n on Judicial Performance v. Carver*, 107 So. 3d 964, 969 (Miss. 2013)).

### I. Willful misconduct and conduct prejudicial to the administration of justice that brings the judicial office into disrepute

¶8. The Commission and Judge Sutton agreed that he violated Canons 1, 2A, 2B, 3A, 3B(1), 3B(2), 3B(8), 3B(11), 3C(1), 3E(1) and 4A of the Code of Judicial Conduct. We agree, but we add that Judge Sutton violated Canon 3B(7) as well.

¶9. The Court has discussed willful misconduct and conduct prejudicial to the administration of justice:

> Willful misconduct in office is the improper or wrongful use of power of his office by a judge acting intentionally, or with gross unconcern for his conduct and generally in bad faith. It involves more than an error of judgment or a mere lack of diligence. Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption, and also any knowing misuse of the

4

office, whatever the motive. However, these elements are not necessary to a finding of bad faith. A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith . . . .

Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute. However, a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner so as to bring the judicial office into disrepute.

***Miss. Comm'n on Judicial Performance v. Boykin***, 763 So. 2d 872, 874–75 (Miss. 2000)

(quoting ***In re Quick***, 553 So. 2d 522, 524–25 (Miss. 1989)).

¶10.   Canon 1 of the Code of Judicial Conduct provides,

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. The provisions of this Code should be construed and applied to further that objective.

Judge Sutton's contacting the investigators, his *sua sponte* actions on behalf of Howard and his conversation with Jones's mother violated the "high standards of conduct" required by Canon 1. Further, his actions did not preserve the integrity and independence of the judiciary.

¶11.   Canon 2A states that "[a] judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Also, Canon 2B, in part, provides,

Judges shall not allow their family, social, or other relationships to influence the judges' judicial conduct or judgment. Judges shall not lend the prestige of their offices to advance the private interests of the judges or others; nor shall judges convey or permit others to convey the impression that they are in a special position to influence the judges.

5

Judge Sutton did not promote public confidence in the integrity and impartiality of the judiciary. His actions were also influenced by social relationships and conveyed the impression that those acquaintances were in a position to influence his actions as a judge. As to Count One, Liddell approached Judge Sutton in court to request his assistance with Howard's charges. Judge Sutton should have immediately declined to assist Howard and informed Liddell that his request was improper because Judge Sutton was bound by his oath to be impartial. Also, while the telephone communication in Count Two was less public, Jones's mother was left with the impression that Judge Sutton would help her son.

¶12. Under Canon 3A, "judicial duties of judges take precedence over all their other activities." Canon 3B(1) declares that a judge should not hear and decide cases in which disqualification is required. Further, Canon 3B(2) requires a judge to "be faithful to the law and maintain professional competence in it" and "not [to] be swayed by partisan interests, public clamor, or fear of criticism." In part, Canon 3B(7) provides,

> A judge shall accord to all who are legally interested in a proceeding, or their lawyers, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding . . . .

Also, Canon 3B(8) requires a judge to "dispose of all judicial matters promptly, efficiently and fairly." Canon 3B(11) provides that "[a] judge shall not disclose or use, for any purpose unrelated to judicial duties, nonpublic information acquired in a judicial capacity." Canon 3C(1) requires a judge to cooperate with other judges and court officials in the administration of justice. Canon 3E(1) describes when judges should disqualify themselves.

6

¶13.    None of Judge Sutton's actions were in accordance with Canon 3 of the Code of Judicial Conduct. In Howard's case, Judge Sutton improperly contacted Investigator Brown, and—after Investigator Brown said he would not "help him out"—Judge Sutton remanded Howard's prostitution charge to the files, *sua sponte*. In Jones's case, Judge Sutton improperly contacted Investigator Burnett. Once Judge Sutton agreed to contact the investigators, he had a duty to disqualify himself from both cases.

¶14.    Also, the discussion of each case with a nonparty, the contact with the investigators in each case and Judge Sutton's action on behalf of Howard violated Canon 3B(7)'s prohibition against *ex parte*[1] communications. Notably, the Commission's findings of fact and recommendation did not find that Judge Sutton violated Canon 3B(7). Thus, it did not consider Judge Sutton's *ex parte* communications.

¶15.    Last, Canon 4A provides,

> A judge shall conduct all of the judge's extra-judicial activities so that they do not:
>
> (1) cast reasonable doubt on the judge's capacity to act impartially as a judge;
>
> (2) demean the judicial office; or
>
> (3) interfere with the proper performance of judicial duties.

Judge Sutton's intermingling of his role as pastor and justice court judge did not comport with Canon 4A when he agreed to contact Investigator Burnett about the charges against Jones.

---

[1] *Ex parte*, Black's Law Dictionary (10th ed. 2014) ("Done or made at the instance and for the benefit of one party only, and without notice to, or argument by, anyone having an adverse interest.").

¶16. After a review of the Commission's findings of fact and recommendation, it is evident that Judge Sutton committed willful misconduct and conduct prejudicial to the administration of justice that brings the judicial office into disrepute. We now determine what sanctions against Judge Sutton are appropriate.

## II. Sanctions

¶17. "The sanctions in judicial-misconduct cases should be proportionate to the judge's offense." *Miss. Comm'n on Judicial Performance v. Sheffield*, 235 So. 3d 30, 34 (Miss. 2017) (quoting *Miss. Comm'n on Judicial Performance v. Littlejohn*, 172 So. 3d 1157, 1161 (Miss. 2015)). To determine the appropriateness of sanctions, the Court weighs six factors:

> "(1) the length and character of the judge's public service; (2) whether there is any prior caselaw on point; (3) the magnitude of the offense and the harm suffered; (4) whether the misconduct is an isolated incident or evidences a pattern of conduct;" (5) whether the conduct was willful, intended to deprive the public of assets, or if it exploited the judge's position; and "(6) the presence or absence of mitigating or aggravating factors."

*Miss. Comm'n on Judicial Performance v. Harris*, 131 So. 3d 1137, 1144 (Miss. 2013) (quoting *Miss. Comm'n on Judicial Performance v. Skinner*, 119 So. 3d 294, 300, 307 (Miss. 2013)).

### A. *The length and character of Judge Sutton's public service*

¶18. Judge Sutton has served as a justice court judge for fourteen years. Aside from Judge Sutton's history with the Commission, which will be discussed as an aggravating factor, the Commission's findings of fact and recommendation does not relay any additional information relating to the character of Judge Sutton's public service.

8

**B.** *Whether there is any caselaw on point.*

¶19. A number of similar cases are described below in order to determine if the recommended sanctions fit Judge Sutton's offenses and are consistent with the Court's previous holdings. The cases described involve *ex parte* communications, as well as instances of judges' remanding charges to the files.

> ***Mississippi Commission on Judicial Performance v. Warren***, 791 So. 2d 194 (Miss. 2001).

¶20. Judge Warren admitted engaging in *ex parte* communications with a defendant's mother-in-law concerning the defendant's DUI charge. *Id.* at 196. The defendant was tried and convicted by a different justice court judge. *Id.* Judge Warren also admitted to being "engaged in the practice of improperly remanding traffic and other tickets to the file based upon his *ex parte* communications with the defendant or other person or persons indicated without notice to the officer or without a hearing or trial being held." *Id.* Judge Warren remanded approximately ten cases to the files in this manner over a period of at least eight months. *Id.* The Court ordered a public reprimand, fined Judge Warren $765 and assessed costs of $100. *Id.* at 199.

> ***Mississippi Commission on Judicial Performance v. Boykin***, 763 So. 2d 872 (Miss. 2000).

¶21. Judge Boykin admitted dismissing traffic tickets and other tickets based on *ex parte* communications with the defendant or other persons without a hearing or notice to the issuing officer. *Id.* at 875. Judge Boykin dismissed approximately eleven cases in this manner over a period of one year and five months. *Id.* Judge Boykin had served as a justice

9

court judge for twenty years, and this complaint was the first against her. *Id.* The Court ordered a public reprimand, fined Judge Boykin $861.50 and assessed all costs against her. *Id.* at 876–77.

> ***Mississippi Commission on Judicial Performance v. Bowen***, 662 So. 2d 551 (Miss. 1995).

¶22. Judge Bowen admitted dismissing eighteen speeding tickets based on *ex parte* communication with defendants and others. *Id.* at 551. The Court ordered a public reprimand, fined Judge Bowen $1,450 and assessed all costs against him. *Id.*

> ***Mississippi Commission on Judicial Performance v. Vess***, 10 So. 3d 486 (Miss. 2009).

¶23. Judge Vess admitted committing several instances of *ex parte* communications. *Id.* at 488–89. Judge Vess entered a plea on behalf of a defendant, spoke with the victim's family before a hearing and required a defendant to pay fines on an incomplete order without affording the defendant notice and opportunity to secure counsel. *Id.* at 488. Also, Judge Vess communicated with the defendant after her conviction, contacted a local paper on behalf of the defendant concerning an error in a story about the defendant's crime and wrote a note to the defendant's employer concerning the verdict after another *ex parte* communication with the defendant. *Id.* at 488–89. The Court ordered a public reprimand, fined Judge Vess $2000 and assessed costs of $100 against him. *Id.* at 495.

> ***Mississippi Commission on Judicial Performance v. Cowart***, 936 So. 2d 343 (Miss. 2006).

¶24. Judge Cowart admitted remanding a number of traffic charges to the files over a period of almost a year. *Id.* at 345–46. Judge Cowart also admitted to a number of *ex parte*

10

communications, including asking law enforcement officers for "help on the tickets." *Id.* at 345. When the issuing officer inquired about the status of the charges, Judge Cowart reactivated the charges and placed them on the docket for hearings. *Id.* at 346. Aside from remanding traffic tickets to the files, Judge Cowart continued to preside over a case after she acknowledged that she had a conflict of interest. *Id.* at 345. The Court ordered a public reprimand, suspended Judge Cowart from office for thirty days without pay and assessed costs of $100. *Id.* at 351.

> ***Mississippi Commission on Judicial Performance v. Chinn***, 611 So. 2d 849 (Miss. 1992).

¶25. The Commission determined that Judge Chinn had engaged in "ticket fixing" in eighteen cases. *Id.* at 849–50. Among other violations, it also determined that Judge Chinn had dismissed seven misdemeanor cases without assessing court costs and had exceeded his authority on twenty-seven occasions. *Id.* at 850. The Court removed Judge Chinn from office. *Id.* at 857.

¶26. Judge Sutton's actions are similar to the conduct in ***Warren***, ***Boykin*** and ***Bowen***. Judge Sutton remanded Howard's criminal charge to the files. Also, as discussed below, Judge Sutton has committed multiple instances of misconduct—including misconduct related to *ex parte* communications. In general, Judge Sutton's conduct is not as severe as the conduct described in ***Vess***, ***Cowart*** and ***Chinn***. Judge Sutton, however, did ask Investigator Brown to "help him out," similar to Judge Cowart's request.

11

## C. *The magnitude of the offense and the harm suffered*

¶27. The magnitude of Judge Sutton's offenses is significant. In Count One, Judge Sutton was approached in court and asked to help a defendant charged with a criminal offense. While the agreed facts before the Court do not include Judge Sutton's in-court response to the request, it is clear that he agreed to help in some manner, given his subsequent *ex parte* communication with Investigator Brown. As to both Counts One and Two, the primary harm suffered from Judge Sutton's actions is to the public, which was left with the impression that members of the judiciary might be partial to certain litigants. Judge Sutton's actions also lent the prestige of his office to advance the private interest of others. "This Court has stated, '[o]fficial integrity of our Justice Court Judges is vitally important, for it is on that level that many citizens have their only experience with the judiciary.'" *Vess*, 10 So. 3d at 493 (quoting *In re Inquiry Concerning Garner*, 466 So. 2d 884, 887 (Miss. 1985), *overruled on other grounds by Miss. Comm'n on Judicial Performance v. Boone*, 60 So. 3d 172, 176–77 (Miss. 2011)).

## D. *Whether the misconduct is an isolated incident or evidences a pattern of conduct.*

¶28. Given Judge Sutton's past improper *ex parte* communications (discussed below) and the multiple improper *ex parte* communications in this case, Judge Sutton "has evinced a pattern of improper and unethical behavior." *Miss. Comm'n on Judicial Performance v. Brown*, 918 So. 2d 1247, 1258 (Miss. 2005).

## E. *Whether the conduct was willful, intended to deprive the public of assets, or if it exploited Judge Sutton's position.*

12

¶29.    "'To determine the extent to which the conduct was willful, "we will examine whether the judge acted in bad faith, good faith, intentionally, knowingly, or negligently."'" *Sheffield*, 235 So. 3d at 35 (quoting *Harris*, 131 So. 3d at 1146). Judge Sutton's conduct in both Counts was willful and exploited his position as a justice court judge. As to Count One, Judge Sutton willingly contacted Investigator Brown and asked if Investigator Brown would "help him out." Once Investigator Brown declined, Judge Sutton—the same day—willfully remanded Howard's charge to the file despite Howard's hearing already having been scheduled. As to Count Two, Judge Sutton willfully contacted Investigator Burnett concerning the charge against Jones. Judge Sutton did not, however, deprive the public of any assets. Further, there is no indication that Judge Sutton personally profited from his actions.

### F.    *The presence or absence of mitigating or aggravating factors*

*Mitigating Factors*

¶30.    Judge Sutton's cooperation with the Commission's inquiry is a mitigating factor. The Commission and Judge Sutton have submitted a joint recommendation to this Court. Also, nothing indicates that Judge Sutton personally profited from his actions in these two cases.

*Aggravating Factors*

¶31.    Prior complaints and censures, though, weigh against Judge Sutton. During his

fourteen-year tenure, he has had nine[2] complaints against him. Of those nine complaints, the Commission resolved five of them by informal action resulting in letters of caution to Judge Sutton, two of them by formal complaints resulting in private admonishment and two of them by formal complaint, which were consolidated and submitted to this Court. *See **Miss. Comm'n on Judicial Performance v. Sutton***, 985 So. 2d 322 (Miss. 2008), *overruled on other grounds by **Boone***, 60 So. 3d at 176–77.

¶32. The Commission has issued cautionary letters to Judge Sutton five times: once in 2012, twice in 2016 and twice in 2017. In 2012, Judge Sutton failed to start court on time and treat the litigants and attorneys with the appropriate demeanor. In 2016, Judge Sutton failed to properly jail litigants in a contempt matter and failed to exhibit the appropriate judicial demeanor. In 2017, Judge Sutton twice failed to exhibit the appropriate judicial demeanor.

¶33. Also, the Commission has privately reprimanded Judge Sutton twice: once in 2005 and once in 2008. In 2005, Judge Sutton personally solicited funds for his reelection campaign. He entered into a memorandum of understanding with the Commission and received a private admonishment. In 2008, Judge Sutton engaged in improper *ex parte* communication. He entered into an agreed statement of facts and proposed recommendation with the Commission and received a private admonishment. The record is silent as to any

---

[2] There is some question as to whether Judge Sutton has had eight or nine complaints against him that were resolved by Commission action. The Commission's agreed facts and recommendation summarize only eight complaints. Describing the complaints, though, the Commission's filing lists seven separate complaints by number along with ***Mississippi Commission on Judicial Performance v. Sutton***, 985 So. 2d 322 (Miss. 2008), which the Commission states is *two* consolidated complaints.

14

details concerning this *ex parte* communication.

¶34.    Last, in 2008, the Commission consolidated two formal complaints against Judge Sutton and submitted them to this Court. ***Sutton***, 985 So. 2d at 324. There, this Court publicly reprimanded Judge Sutton and assessed costs of $1,900.89 against him for his misconduct in three cases. *Id.*

¶35.    In the first case, Judge Sutton had awarded a realty company a judgment for past-due rent and removal of a tenant. *Id.* On December 8, 2005, Judge Sutton signed a warrant of removal to evict the defendant. *Id.* According to the realty company, Judge Sutton—on December 19, 2005—called the realty company and informed the company that he had spoken with the tenant, decided to stay the warrant of removal and demanded that the company return the tenant's apartment key to the court. *Id.* at 325. The company returned the key to the court and sued the tenant again in Hinds County Justice Court after the tenant failed to pay November and December 2005 rents. *Id.*

¶36.    In the second and third cases, Judge Sutton presided over two suits in which the same plaintiff sought to evict two different tenants from their apartments due to alleged lease violations that did not involve past-due rent. *Id.* After hearing testimony in one of the cases, Judge Sutton arranged to inspect the tenant's apartment during the noon recess. *Id.* Judge Sutton failed to meet the parties and—during the afternoon hearing—publicly chastised the plaintiff's attorney for having attempted to contact him through his chambers when he did not appear at the apartment complex during the noon recess. *Id.* The next day, Judge Sutton inspected the apartment without the plaintiff's attorney present and informed the tenant that

15

he was holding her case in abeyance. *Id.* at 326. The Commission also determined that Judge Sutton failed to make a final ruling in either case. *Id.*

¶37. After review, the Court agreed with the Commission that Judge Sutton violated Code of Judicial Conduct Canons 1, 2A, 3B(2), 3B(4), 3B(7), 3B(8) and 3C(1). *Id.* at 326–27. The Court agreed with the Commission's recommended sanctions. *Id.* at 330.

¶38. The aggravating factors most relevant to Judge Sutton's current misconduct are, of course, his past *ex parte* communications. These communications, though, occurred more than ten years ago. Still, given the number of violations that Judge Sutton has had in the interim and the fact that he has been publically and privately reprimanded, as well as sanctioned for improper *ex parte* communication, his past conduct should factor into the Court's decision. As the Commission did not find that Judge Sutton violated Canon 3B(7)—the Canon pertaining to *ex parte* communication—there is no indication that the Commission placed any special emphasis on Judge Sutton's past *ex parte* communications.

¶39. Given Judge Sutton's history with the Commission and his past sanctions for improper *ex parte* communication, we suspend Judge Sutton for thirty days without pay, in addition to the Commission's recommended sanctions of a public reprimand and a $500 fine. Judge Sutton remanded a criminal charge to the files, engaged in multiple *ex parte* communications and left the public and the law-enforcement community with the impression that he was biased and was willing to act partially on behalf of certain litigants. Judge Sutton's misconduct merits a thirty-day, unpaid suspension, a $500 fine and a public reprimand.

16

**CONCLUSION**

¶40.    Judge Sutton committed misconduct in violation of the Code of Judicial Conduct and section 177A of the Mississippi Constitution of 1890.   We impose the Commission's proposed sanctions, but we add a thirty-day suspension without pay.   These sanctions are proportionate to Judge Sutton's offense and are warranted by his misconduct.   Thus, Judge Sutton is to be publicly reprimanded, fined $500 and suspended without pay for thirty days. We order that this public reprimand shall be read in open court when the venire panel meets on the first day of the next term of the Circuit Court of the First Judicial District of Hinds County, with Judge Sutton present.

¶41.    **HINDS COUNTY JUSTICE COURT JUDGE FRANK SUTTON SHALL BE SUSPENDED FROM OFFICE FOR A PERIOD OF THIRTY (30) DAYS WITHOUT PAY, EFFECTIVE ON THE DATE OF ISSUANCE OF THIS COURT'S MANDATE AND SHALL BE PUBLICLY REPRIMANDED AND FINED $500. THE PUBLIC REPRIMAND SHALL BE READ IN OPEN COURT BY THE PRESIDING JUDGE ON THE FIRST DAY OF THE NEXT TERM OF THE CIRCUIT COURT OF HINDS COUNTY IN WHICH A JURY VENIRE IS PRESENT AFTER THE ISSUANCE OF THIS COURT'S MANDATE, WITH JUDGE SUTTON PRESENT.**

**RANDOLPH, C.J., KING, P.J., COLEMAN, MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR.  KITCHENS, P.J., NOT PARTICIPATING.**

17