# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-JP-00504-SCT

*MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE*

*v.*

*MUNICIPAL COURT JUDGE CARLOS E. MOORE*

| | |
|---|---|
| ATTORNEYS FOR PETITIONER | ASHLEY MAY |
| | RACHEL L. WILSON |
| ATTORNEY FOR RESPONDENT: | TERRIS CATON HARRIS |
| NATURE OF THE CASE: | CIVIL - JUDICIAL PERFORMANCE |
| DISPOSITION: | SIXTY-DAY SUSPENSION WITHOUT PAY; PUBLIC REPRIMAND; FINE OF $1,500 - 02/16/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Judge Carlos E. Moore is a municipal court judge for the Mississippi cities of Grenada and Clarksdale. He also practices law with The Cochran Firm. The Mississippi Commission on Judicial Performance filed a formal complaint against Judge Moore, alleging that he improperly summoned two local police officers to the municipal courtroom in Grenada and criticized them publicly concerning a discussion about a private client of Moore's that had occurred several days earlier at Judge Moore's private law office. The Commission and Judge Moore ask this Court to accept the stipulated findings of fact and to approve the recommended sanctions of a public reprimand and fine of $1,500. After careful consideration of the judicial misconduct at issue, we are unable to agree fully with the recommendation of

the Commission. Because Judge Moore abused the power of his office to chastise and embarrass police officers in open court concerning a matter related to the judge's private law practice, we order a 60-day suspension from judicial office without pay in addition to the recommended sanctions.

## FACTS AND PROCEDURAL HISTORY

¶2.     According to the Commission's formal complaint, a private client of Judge Moore's was a victim of a shooting at the Satan's Sidekick Clubhouse in Grenada in November 2020. On December 4, 2020, Detective Sergeant Chris Brown of the Grenada Police Department (along with a Mississippi Bureau of Investigation officer and a district attorney's investigator) interviewed the client at Moore's private law office. During the meeting, Moore learned that a search warrant had been issued for his client's telephone records.[1] A disagreement arose concerning the search warrant, with Moore telling the officers he would evaluate whether the warrant was valid before advising his client to comply with it. Moore terminated the interview and told the officers to leave his office. Detective Sergeant Brown said to Moore, "I've got your number," which Moore interpreted as a threat. Moore called Brown's superior, Police Chief George Douglas, to initiate a complaint; but when he was told that the complaint had to be in writing, he chose not to file one.

¶3.     Four days later, Judge Moore, in his official capacity as a municipal court judge, held court in Grenada Municipal Court, which is housed in the same building as the municipal police headquarters. Prior to the commencement of the day's proceedings, Judge Moore sent

---

[1] The record does not reveal what court had issued the search warrant.

2

word to Grenada Police Chief Douglas and Detective Sergeant Brown to come to the courtroom. When the officers entered the courtroom, Judge Moore halted the court proceedings and directed both men to stand before him at the bench. Despite Detective Sergeant Brown's request that the discussion be held in the privacy of the judge's chambers, Judge Moore proceeded, in the presence of the people in the courtroom, to chastise the officers regarding the meeting on December 4, 2020. According to the Commission's complaint, Judge Moore accused Detective Sergeant Brown of threatening to cause bodily harm to Moore based on the remark he had made while leaving Moore's law office. Additionally, the formal complaint alleged that Judge Moore labeled Detective Sergeant Brown a racist. The complaint said also that Moore had threatened to have Brown arrested if he ever visited one of Moore's properties again.

¶4.     The Commission filed the formal complaint against Moore on May 12, 2021, citing violations of Section 177A of the Mississippi Constitution and Canons 1, 2A, 2B, 3B(3), 3B(4), and 4A of the Code of Judicial Conduct. Judge Moore responded, denying the complaint's characterization of some of the events, including that the exchange at the law office was "heated" and the allegation that he had called Officer Brown a racist. On February 23, 2022, in lieu of a formal hearing, Judge Moore joined a Stipulation of Agreed Facts and Recommendation, which was unanimously approved by the Commission. Moore stipulated that on December 4, 2020, he had "kicked all three law enforcement officers out of his office" after "some discussion and disagreement about the search warrant" for his client's telephone records. He further stipulated that he had asked the police chief and Detective

3

Sergeant Brown to "appear in his courtroom," that he had "halted the court proceedings and had both officers stand before him at the bench," that he had denied the request to have the discussion take place in chambers, and that he had "publicly chastised and embarrassed the two officers in the presence of the entire courtroom."

¶5.   On May 16, 2022, the Commission rendered its findings of fact and conclusions of law, recommending that Judge Moore be publicly reprimanded and fined $1,500. The Commission moved this Court to accept its recommendation on June 21, 2022. Judge Moore filed a response joining the Commission's motion.

## STANDARD OF REVIEW

¶6.   This Court is authorized by the Mississippi Constitution to "remove from office, suspend, fine or publically censure or reprimand any justice or judge of this state for . . . wilful misconduct in office . . . or . . . conduct prejudicial to the administration of justice which brings the judicial office into disrepute[.]'" *Miss. Comm'n on Jud. Performance v. Clinkscales*, 192 So. 3d 997, 1000 (Miss. 2016) (alterations in original) (internal quotation marks omitted) (quoting Miss. Const. art. 6, § 177A). This Court is not bound by the Commission's findings, but "may accept, reject or modify, in whole or in part, the findings and recommendations of the Commission." Miss. Comm'n on Jud. Performance R. 10E. "To impose sanctions, the Court 'must find clear and convincing evidence of misconduct.'" *Miss. Comm'n on Jud. Performance v. Sutton*, 275 So. 3d 1062, 1065 (Miss. 2019) (internal quotation marks omitted) (quoting *Miss. Comm'n on Jud. Performance v. Shoemake*, 191 So. 3d 1211, 1216 (Miss. 2016)). "This Court is the 'ultimate decision-maker

4

in judicial performance cases' and 'makes the final determination as to the appropriate action to be taken when a judge has committed willful misconduct or conduct prejudicial to the administration of justice that brings the judicial office into disrepute . . . .'" *Miss. Comm'n on Jud. Performance v. Watts*, 324 So. 3d 796, 798 (Miss. 2021) (alteration in original) (internal quotation marks omitted) (quoting *Miss. Comm'n on Jud. Performance v. Bozeman*, 302 So. 3d 1217, 1222 (Miss. 2020)). "In cases involving judicial discipline, it is this Court's duty to 'conduct an independent inquiry of the record' and to make a 'final determination of the appropriate action to be taken in each case.'" *Clinkscales*, 192 So. 3d at 1000-01 (quoting *In re Anderson*, 412 So. 2d 743, 746 (Miss. 1982)).

## DISCUSSION

**I.     Whether Judge Moore's conduct constituted "wilful misconduct in office . . . or . . . conduct prejudicial to the administration of justice which brings the judicial office into disrepute . . ." in violation of article 6, section 177A, of the Mississippi Constitution.**

¶7.     This Court has defined "wilful misconduct" as:

> the improper or wrong use of power of his office by a judge acting intentionally or with gross unconcern for his conduct and generally in bad faith. It involves more than an error of judgment or a mere lack of diligence. Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption, and also any knowing misuse of the office, whatever the motive. However, these elements are not necessary to a finding of bad faith. A specific intent to use the powers of judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith. . . .
>
> > Wilful misconduct in office of necessity is conduct prejudicial to the administration of justice which brings the judicial office into disrepute.

5

However, a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute.

*Miss Comm'n on Jud. Performance v. Weisenberger*, 201 So. 3d 444, 448 (Miss. 2016) (alteration in original) (quoting *Miss. Comm'n on Jud. Performance v. Harris*, 131 So. 3d 1137, 1142 (Miss. 2013)). Violations of canons of the Code of Judicial Conduct can amount to a violation of article 6, section 177A, of the Mississippi Constitution when the judge's actions constitute "wilful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute." *Miss. Comm'n on Jud. Performance v. Fowlkes*, 121 So. 3d 904, 907 (Miss. 2013).

¶8.    The Commission found by clear and convincing evidence that Judge Moore's actions constituted conduct prejudicial to the administration of justice that brought the judicial office into disrepute, violating article 6, section 177A, of the Mississippi Constitution. Specifically, the Commission contends that Judge Moore violated Canons 1, 2A, 2B, 3B(2), 3B(4), and 4A when he publicly chastised the police officers with regard to one of the judge's private clients while Moore was engaged in the performance of his official duties as a municipal court judge. Judge Moore has not contested that his actions amounted to judicial misconduct and that they were prejudicial to the administration of justice that brought the judicial office into disrepute.

*Canon 1*

¶9.    Canon 1 of the Code of Judicial Conduct provides generally that "[a] judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall

6

personally observe those standards so that the integrity and independence of the judiciary will be preserved." "The official integrity of the justice court judges[2] is vitally important, for it is on that level that most citizens have their only experience with the judiciary."*Miss. Comm'n on Jud. Performance v. Guest*, 717 So. 2d 325, 329 (Miss. 1998) (quoting *Miss. Comm'n on Jud. Performance v. Gunn*, 614 So. 2d 387, 389 (Miss. 1993), *overruled on other grounds by Miss. Comm'n on Jud. Performance v. Boone*, 60 So. 3d 172 (Miss. 2011)). Through his use of judicial authority in the courtroom to deal with a conflict that had arisen from his private law practice, Judge Moore failed to observe the high standard of conduct required to preserve the integrity and independence of the judiciary.

*Canon 2*

¶10.    Canon 2A and 2B of the Code of Judicial Conduct provide, in pertinent part:

> **A.** A judge shall respect and comply with the law and shall act in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
>
> **B.** Judges shall not allow their family, social, or other relationships to influence the judges' judicial conduct or judgment. Judges shall not lend the prestige of their offices to advance the private interests of the judges or others . . . .

¶11.    Judge Moore chose a courtroom where he was the presiding judge as the place to launch a verbal attack on two law enforcement officers for a grievance, unrelated to his judicial duties, that had arisen in his private law practice. Judge Moore's behavior was antithetical to the promotion of public confidence in the integrity and impartiality of the judiciary. Judge Moore stopped public court proceedings, denied a request to move the

---

[2] Other than the fact that municipal courts do not handle civil cases, the work of municipal courts is similar to that of justice courts.

7

conversation to chambers, and chastised the officers in the presence of everyone in the courtroom. This behavior constituted the judge's lending the prestige of the judicial office to further his private interests. The public disruption of the regular work of the court to use the courtroom to address a matter related to the judge's private interest as a practicing attorney is the sort of misconduct that erodes public confidence in the integrity of the judiciary and leaves the public in doubt of the judge's ability to execute with impartiality his or her judicial responsibilities.

¶12. Additionally, the underlying conflict was related to an official investigation of a criminal matter. While a lawyer's zeal for his client's cause usually is commendable, in this instance, Lawyer Moore made the extraordinarily poor choice to use the judicial office with which he had been entrusted as a weapon to secure the presence of an investigating officer before his bench, heightening the severity of the misconduct.

*Canon 3*

¶13. Canon 3 provides, in pertinent part:

> **B. Adjudicative Responsibilities.**
>
> . . . .
>
> (3) A judge shall require order and decorum in proceedings before the judge.
>
> (4) Judges shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom they deal in their official capacities, and shall require similar conduct of lawyers, and of their staffs, court officials, and others subject to their direction and control.

¶14.    Judge Moore's misconduct took place in open court. His irate criticism of the officers was devoid of the decorum judges are required to maintain, especially in court. Judge Moore forsook his duty to be "patient, dignified, and courteous" to persons in the courtroom. M.C.J.C. Canon 3B(4). When a judge fails to hold himself to the required standard of demeanor, he places himself in a poor position to expect exemplary deportment from "others subject to [his] direction and control." M.C.J.C. Canon 3B(4). While not analogous factually, the Commission directs our attention to *Guest*. *Guest*, 717 So. 2d 325. In *Guest*, a judge, during formal proceedings, directed profanity at a litigant, then left the bench and physically assaulted that litigant. *Id.* at 327. This Court held "the fact that Judge Guest's misconduct took place during proceedings in a crowded court room has special impact on the choice of an appropriate sanction." *Id*. at 329. Although Judge Moore's misconduct was not as extreme as that described in *Guest*, the circumstance that the misconduct took place in the courtroom in which he presided as opposed to "a private setting and in his capacity as a private individual" is of special concern. *Id.*

*Canon 4*

¶15.    Canon 4 requires that a "Judge Shall So Conduct the Judge's Extra-Judicial Activities as to Minimize the Risk of Conflict with Judicial Obligations." Further:

> **A. Extra-judicial Activities in General.** A judge shall conduct all of the judge's extra-judicial activities so that they do not:
>
> > (1) cast reasonable doubt on the judge's capacity to act impartially as a judge;
> >
> > (2) demean the judicial office; or

9

(3) interfere with the proper performance of judicial duties.

¶16.    Judge Moore's private practice of law is an extrajudicial activity.[3] Judge Moore created a conflict with his judicial obligations when he willfully engineered an encounter with the two officers in the courtroom, during a session of court over which he was presiding, for the purpose of confronting them about a conflict related to his private law practice. Within the courtroom, a judge is in a position of authority. The judge is, in fact, *the* authority over the proceedings and the actions of those present. That authority is entrusted to the judge by the public for the purpose of facilitating the administration of justice in cases assigned to the judge for adjudication. Using this authority to ensure a captive audience of persons with whom the judge has an ongoing extrajudicial conflict is demeaning to the judicial office and casts doubt on the judge's capacity to act impartially in his role as judge. Judge Moore halted regular court proceedings to engage in this encounter, thereby interfering with the performance of his judicial duties.

¶17.    In *Sutton*, this Court found a violation of Canon 4A in a case in which a justice court judge intermingled his roles as a pastor and as a justice court judge by communicating with a police investigator on behalf of a parishioner's son who had been arrested for marijuana possession. *Sutton*, 275 So. 3d 1062. In that case, in which the judge also asked an officer

---

[3] Municipal court judges in Mississippi are required by law to be members of the Bar, except that nonlawyer justice court judges also may be employed as municipal judges. *See* Miss. Code Ann. § 21-23-5 (Rev. 2015). Municipal judges who are lawyers may engage in private law practice that does not conflict with their judicial duties.

to "help him out" with a litigant's prostitution charge because he knew her family,[4] this Court departed from the recommended sanction and imposed a stricter sanction of a 60-day suspension. *Id.* at 1064. Here, Judge Moore used his position as municipal court judge to obtain the appearance of the police officers in court for the purpose of facilitating the interests of his extrajudicial endeavors. That conduct violated Canon 4.

## II. Whether Judge Moore's misconduct warrants the recommended public reprimand and a fine of $1,500.

¶18.　"The sanctions in judicial-misconduct cases should be proportionate to the judge's offense." *Harris*, 131 So. 3d at 1144 (citing *Miss. Comm'n on Jud. Performance v. Boykin*, 763 So. 2d 872, 876 (Miss. 2000). This Court considers the following factors in determining an appropriate sanction:

> "(1) the length and character of judge's public service; (2) whether there is any prior case law on point; (3) the magnitude of the offense and the harm suffered; (4) whether the misconduct is an isolated incident or evidences a pattern of conduct;" (5) whether the conduct was willful, intended to deprive the public of assets, or if it exploited the judge's position; and "(6) the presence or absence of mitigating or aggravating factors."

*Id.* (quoting *Miss. Comm'n on Jud. Performance v. Skinner*, 119 So. 3d 294, 307 (Miss. 2013)). "[W]here the Commission finds judicial misconduct within one of the five categories under Section 177A [of the Mississippi Constitution], . . . disposal of the violation by agreement, settlement, or memorandum of understanding between the respondent and the Commission, are beyond the Commission's constitutional authority." *Miss. Comm'n on Jud. Performance v. Martin*, 995 So. 2d 727, 730 (Miss. 2008). "That said, the Commission is

---

[4] When the officer refused, the judge sent the prostitution charge to the inactive files *sua sponte* and without a hearing. *Sutton*, 275 So. 3d at 1067.

certainly free to agree to recommend to this Court approval of a memorandum of understanding which is supported by the facts." *Id.* Nevertheless, "even when the Commission and the judge enter into a joint recommendation—this Court's acceptance of the joint recommendation is not a certainty." *Miss. Comm'n on Jud. Performance v. Walker*, 172 So. 3d 1165, 1167 (Miss. 2015) (internal quotation marks omitted) (quoting *Miss. Comm'n on Jud. Performance v. Darby*, 143 So. 3d 564, 567 (Miss. 2014)).

### 1. The Length and Character of Judge Moore's Public Service

¶19. Judge Moore was licensed to practice law in Mississippi in 2002. Prior to his being appointed a municipal judge for the City of Grenada, Judge Moore was appointed as a municipal judge for the City of Clarksdale in 2017.[5] His service as a municipal judge in Grenada began in 2020. The record reveals no other public service by Judge Moore.

### 2. Case Law

¶20. This Court has no prior case law directly analogous to the facts of the present case. We consistently have regarded temporary suspension from office, however, as an appropriate sanction for misconduct that occurred in the courtroom and was calculated to advance private interests in connection with an ongoing criminal matter. In *Guest*, in which the justice court judge verbally and physically assaulted a litigant in the courtroom, the sanctions included a 90-day suspension from office. *Guest*, 717 So. 2d at 332. In *Mississippi Commission on Judicial Performance v. McGee*, we found that a 270-day suspension from office was

---

[5] Moore continues to serve as a municipal judge in Clarksdale pursuant to his appointment to a four-year term by the mayor and board of commissioners of the City of Clarksdale on June 28, 2021.

12

warranted when the justice court judge used his judicial status to interfere with the prosecution of a crime committed against a relative and made statements in open court encouraging vigilante justice. *Miss. Comm'n on Jud. Performance v. McGee*, 71 So. 3d 578, 583 (Miss. 2011). In *Skinner*, in which a judge issued bench warrants in a case after having recused, a 60-day suspension was imposed. *Skinner*, 119 So. 3d at 297. We have decided additional cases supporting suspension from office as being warranted for a judge's misuse of his or her office in this manner. *See Miss. Comm'n on Jud. Performance v. Sanford*, 941 So. 2d 209, 218 (Miss. 2006) (30-day suspension warranted when judge asked an officer to be late to court so that DUI charges would be dropped against a defendant); *Miss. Comm'n on Jud. Performance v. Thompson*, 80 So. 3d 86, 88 (Miss. 2012) (*ex parte* communications and entering an order nullifying a stop-payment order on a check in a case not before the judge warranted a 30-day suspension); *Miss. Comm'n on Jud. Performance v. Bustin*, 71 So. 3d 598, 607 (Miss. 2011) (the issuance of an arrest warrant for judge's private client's ex-husband warranted a 30-day suspension).

¶21.    Upon a thorough and independent review of the record, we find that a 60-day suspension from judicial office, without pay, is an appropriate sanction that reflects the gravity of this offense. Judge Moore inappropriately used a courtroom and the prestige and authority of his judicial office to make persons with whom he had a disagreement unrelated to his judgeship stand before the judicial bench and be criticized and embarrassed publicly by the presiding judge.

¶22. To make matters worse, this disagreement arose from an investigation of a criminal matter by a police department, the Mississippi Bureau of Investigation, and the district attorney in which at least one person had been shot. Clearly, Judge Moore was angry that a search warrant had been issued for his client's telephone records. Moore acknowledged to the Commission that, "After some discussion and disagreement about the search warrant, [Moore] ended the interview and kicked all three law enforcement officers out of his office."[6] When he learned from the police chief that he could not lodge a complaint with the police department unless he put the complaint in writing, he embarked on another course of action.

¶23. In contemplating an appropriate penalty for Moore's judicial misconduct, the Court finds it significant that, rather than allowing his anger to subside, the incident at his law office continued to be on Judge Moore's mind over the next four days and became his first order of business when he convened a session of the Grenada Municipal Court on December 8, 2020. Rather than following the appropriate and prescribed procedure for lodging a complaint, Judge Moore contrived a means of doing so publicly, in a crowded courtroom, that was populated in large part by people who were there because of charges brought against them by the local police. Refusing the request to deal with the matter in the judge's chambers, by his own admission Judge Moore proceeded to chastise and embarrass the investigating officer publicly, not just anywhere, but in the courtroom in which Grenada police officers with cases on Judge Moore's docket had assembled for a session of court in

---

[6] Even though all three were described in the record as "law enforcement officers," one of them was from the district attorney's office.

which they regularly testified. And the judge made sure that Detective Sergent Brown's superior officer, the chief, was present.

### 3. Magnitude of the Offense and the Harm Suffered

¶24. The Commission asserts that Judge Moore's use of a public courtroom to address a personal conflict "debased the prestige of the judiciary in a matter related to his private law practice." "Such impropriety erodes the public confidence in our judiciary" ***Miss. Comm'n on Jud. Performance v. Dearman***, 73 So. 3d 1140, 1144 (Miss. 2011). We agree. And as discussed above, Judge Moore's misconduct also risked interference with official duties of the police, as the exchange at the law office concerned their investigation of a violent crime. Police officers should not have to anticipate or be subjected to retaliation from judges they must deal with in both judicial and extrajudicial capacities.

### 4. Whether the misconduct is an isolated incident or evinces a pattern of conduct.

¶25. In December 2020, Judge Moore entered into a memorandum of understanding with the Commission regarding his inappropriate use of his office on social media. Judge Moore has no other disciplinary history before the Commission or this Court. This Court, however, is willing to suspend a judge as a first sanction when the misconduct warrants doing so. ***Miss. Comm'n on Jud. Performance v. Patton***, 57 So. 3d 626, 634 (Miss. 2011). We find that the conduct in this case, similar to other cases involving a judge's misuse of his or her office to further personal interests, is egregious enough to warrant suspension.

### 5. Whether the conduct was willful, intended to deprive the public of assets, or if it exploited the judge's position.

15

¶26. We have held, "[i]n examining the extent to which the conduct was willful, we will examine 'whether the judge acted in bad faith, good faith, intentionally, knowingly, or negligently.'" *Skinner*, 119 So. 3d at 306-07 (quoting *In re Coffey's Case*, 949 A.2d 102, 115 (N.H. 2008)). "[M]isconduct that is the result of deliberation is generally more serious than that of a spontaneous nature." *Id.* at 307. Judge Moore's conduct evinces deliberation and corrupt intent. Four days after the encounter at his private law office, he required the presence of the two officers in court and denied their request to move the conversation to the privacy of the judge's chambers. This indicates Judge Moore's intention to use his judicial authority to maintain control over the setting in which he publicly chastised and embarrassed the police chief and the detective sergeant. The courtroom is a public asset. Judge Moore's conduct of halting regular court proceedings to have this encounter was a willful exploitation of his position as judge to further his private interests unrelated to the work of the court. Thus, he used a public facility for a private purpose. He also interrupted the police work the two officers were being paid to perform for the City of Grenada.

¶27. The deliberateness of the conduct and the intentional use of the public space of the courtroom supports this Court's upward departure from the Commission's recommendation and the imposition of the additional sanction of a 60-day suspension from office without pay.

### 6. Presence or Absence of Mitigating Factors

¶28. The Commission reports that Judge Moore cooperated during the investigation. Additionally, he has agreed never again to utilize a courtroom over which he presides for any discussions related to cases in which he is acting as an attorney. This Court has found "that

16

such contrite conduct serves as a mitigating factor." *Harris*, 131 So. 3d at 1147 (citing *Thompson*, 80 So. 3d 86).

## CONCLUSION

¶29. Judge Moore does not contest that his actions violated canons 1, 2A, 2B, 3B(3), 3B(4), and 4A of the Code of Judicial Conduct. He used the prestige of his office and the space of the courtroom to advance his private interests in his private law practice while in his official capacity as a judge. Such willful misconduct is prejudicial to the administration of justice that brings the judicial office into disrepute. We therefore impose a sanction of suspension of Judge Moore, without pay, for 60 days from his position as municipal judge for both Grenada and Clarksdale, a public reprimand, and a fine of $1,500. The public reprimand shall be read in open court by the presiding judge of the Grenada County Circuit Court on the first day of the next term of that court in which a jury venire is present after the issuance of this Court's mandate. The public reprimand also shall be read in open court by the presiding judge of the Coahoma County Circuit Court on the first day of the next term of that court in which a jury venire is present after the issuance of this Court's mandate.

¶30. Judge Moore shall stand within the well of the court, before the bench, and the circuit judge shall read, aloud and in the hearing of all in attendance, the following public reprimand, in its entirety:

### Public Reprimand

The Mississippi Supreme Court recently decided the case of *Mississippi Commission on Judicial Performance v. Carlos E. Moore*. Carlos E. Moore is a municipal court judge for the Mississippi cities of Grenada and Clarksdale, and he also maintains a private law practice.

17

On December 4, 2020, Detective Sergeant Chris Brown of the Grenada Police Department, along with a Mississippi Bureau of Investigation officer and a district attorney's investigator, interviewed a client of Moore's at his private law office. During the interview, Attorney Moore learned that a search warrant had been issued for his client's telephone records. A disagreement arose over the search warrant, and Attorney Moore told the officers to leave his office.

Four days later, Judge Moore, in his official capacity as a municipal court judge, held court in Grenada Municipal Court. He sent word to Grenada Police Chief George Douglas and Detective Sergeant Chris Brown to come to the courtroom. When they arrived, Judge Moore stopped the court proceedings that were in progress and had both officers stand before him at the bench. He denied Detective Sergeant Brown's request for the discussion to take place in the judge's chambers, then proceeded to chastise and embarrass the two officers publicly regarding the December 4 incident at Moore's law office.

The Mississippi Supreme Court ruled that this conduct violated the Mississippi Code of Judicial Conduct and ordered sanctions against Judge Moore, including a 60-day suspension from judicial office in both Grenada and Clarksdale, without pay, a $1,500 fine, and a public reprimand, to be read in open court by the presiding judge of the Grenada County Circuit Court on the first day of the next term of that court in which a jury venire is present after the issuance of the Supreme Court's mandate. Likewise, the public reprimand shall be read in open court by the presiding judge of the Coahoma County Circuit Court on the first day of the next term of that court in which a jury venire is present after the issuance of the Supreme Court's mandate.

THEREFORE, by order of the Mississippi Supreme Court, Municipal Court Judge Carlos E. Moore is hereby publicly reprimanded for his violation of the following canons of the Mississippi Code of Judicial Conduct:

Canon 1 provides that "[a] judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved."

By using his judicial authority in a public courtroom to deal with a conflict that had arisen from his private law practice, Judge Moore failed to observe the high standard of conduct required to preserve the integrity and independence of the judiciary.

Canon 2 provides that "[a] judge shall . . . act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary[,]" and that "Judges shall not lend the prestige of their offices to advance the private interests of the judges or others . . . ."

Judge Moore's choice of a public courtroom, in which court was in session with him presiding, as a place to scold law enforcement officers for a matter concerning one of his private clients did nothing to promote public confidence in the integrity and impartiality of the judiciary and likely had an opposite effect. Judge Moore also violated Canon 2 by lending the prestige of his judicial office to advance the private interests of himself and his client. Additionally, the underlying conflict was related to an official investigation of a criminal matter, heightening the severity of the misconduct.

Canon 3 provides that "Judges shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom they deal in their official capacities . . . ."

Judge Moore's public criticism of the officers he compelled to stand before the judge's bench while he embarrassed them in the presence of everyone in the courtroom was devoid of the dignified decorum that judges are required to maintain, especially in court.

Canon 4 requires a judge to conduct his extrajudicial activities so they do not "(1) cast reasonable doubt on the judge's capacity to act impartially as a judge; (2) demean the judicial office; or (3) interfere with the proper performance of judicial duties."

Judge Moore created a conflict with his judicial obligations when he deliberately engineered a courtroom encounter with the two officers, during a session of court over which he was presiding, for the purpose of confronting them about a dispute related to his private law practice and unrelated to anything that was before the Grenada Municipal Court at that time. Using his judicial authority to create a captive audience composed of two law enforcement officers against whom the judge had an extrajudicial grievance was demeaning to the judicial office and cast doubt on Moore's capacity to act impartially in his role as a judge.

This concludes the public reprimand of Municipal Court Judge Carlos E. Moore.

¶31.　**CARLOS E. MOORE SHALL BE SUSPENDED FROM OFFICE, WITHOUT PAY, FOR 60 DAYS FROM HIS POSITION AS MUNICIPAL JUDGE FOR BOTH GRENADA AND CLARKSDALE EFFECTIVE ON THE DATE OF THE ISSUANCE OF THE MANDATE OF THIS COURT AND SHALL BE PUBLICLY REPRIMANDED IN OPEN COURT BY THE PRESIDING JUDGE ON THE FIRST DAY OF THE NEXT TERM OF THE GRENADA COUNTY CIRCUIT COURT IN WHICH A JURY VENIRE IS PRESENT FOLLOWING THE ISSUANCE OF THE MANDATE OF THIS COURT, WITH JUDGE MOORE PRESENT. JUDGE MOORE SHALL ALSO BE PUBLICLY REPRIMANDED IN OPEN COURT BY THE PRESIDING JUDGE ON THE FIRST DAY OF THE NEXT TERM OF THE COAHOMA COUNTY CIRCUIT COURT IN WHICH A JURY VENIRE IS PRESENT FOLLOWING THE ISSUANCE OF THE MANDATE OF THIS COURT, WITH JUDGE MOORE PRESENT. JUDGE MOORE IS FINED $1,500.**

　　**RANDOLPH, C.J., KING, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**